**Edward S. TELLIER, Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

**No. S–4239.**

Supreme Court of Alaska.

March 20, 1992.

---

Charles E. Tulin, Anchorage, and Richard P. Clem, Minneapolis, Minn., for appellant.

Sigurd E. Murphy and Steven S. Tervooren, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, John M. Thomas and Gary L. Hayden, Office of the Gen. Counsel, Ford Motor Co., Dearborn, Mich., for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal arises from a products liability case. Plaintiff Edward Tellier sued Ford Motor Company for the injuries Tellier suffered in a car accident. After the jury returned a verdict in favor of Ford, Tellier filed a motion for a new trial. He alleged that Ford had introduced prejudicial evidence of Tellier's prior conviction for sexual abuse of a minor, in violation of the court's ruling on a motion *in limine.* The superior court denied that motion. Tellier appeals. We affirm.

### I.

Tellier suffered serious injuries when his 1982 Ford EXP coupe went off the road and he was thrown through the car's sunroof. Tellier sued Ford in strict liability and negligence, claiming that his injuries

were the result of the defective design of the car's roof and sunroof.

Prior to trial, Tellier made a motion *in limine* to prevent Ford from introducing evidence of Tellier's prior conviction and incarceration for the crime of sexual abuse of a minor in the first degree. Ford opposed the motion, arguing that the evidence was admissible as substantive evidence that the emotional problems exhibited by Tellier after the accident were not caused by the accident, and as impeachment evidence to challenge Tellier's credibility. Despite these arguments, Judge Gonzalez granted Tellier's motion, ruling that Ford was precluded from presenting any evidence of Tellier's conviction.

During the trial, Ford introduced into evidence Tellier's medical records from Harborview Developmental Center as a basis for an expert witness' opinions regarding Tellier's care at Harborview. These records, marked Defendant's Exhibit B, contained at least four references to Tellier's prior conviction, on pages 4, 149, 158 and 275. Tellier did not initially object to the admission of these pages into evidence. However, when Ford's counsel later referred to specific pages of the medical records while examining an expert witness, Tellier's counsel objected to page 4 on the grounds that it contained a reference to Tellier's conviction. Judge Gonzalez responded that he had assumed when he admitted the medical records that both parties had had the opportunity to review the records, and that they would raise specific objections to documents contained within the records at the time they were offered. He ruled that the reference to the sexual abuse conviction on page 4 could not be discussed by the doctor, and it was agreed that the sentence referring to the conviction would be redacted from the document.

Judge Gonzalez then instructed counsel for both parties to review the medical records for similar information:

[I]f the parties have not done so, I highly recommend that you review the medical records very closely. If there's any objectionable information that the parties want to move to excise from the records,

you'd better do it now because it's been stipulated that the records are in evidence and if there is a matter that shouldn't be there, we'd better address it.

He later specifically instructed Tellier's counsel to review the Harborview records carefully to ensure that the records did not contain objectionable information:

I will suggest Mr. Tulin and Mr. Clem, if you have not already done so, review those Harborview records to determine whether or not there are any other entries that deal with the areas that the Court has covered that will not be used in this trial.

Tellier's counsel reviewed the Harborview medical records later that day and found another reference to Tellier's prior conviction on page 158, which was subsequently redacted by agreement of both parties. Tellier's counsel apparently did not find the other two references to Tellier's prior conviction on pages 149 and 275.

At the conclusion of the trial, Judge Gonzalez once again instructed counsel for both parties to review the documentary evidence carefully "to make sure that no document that's not in evidence is inadvertently sent into the jury room." Ford's counsel then sought to enter into evidence the pages of the Harborview medical records which Dr. Reynolds relied on in forming his opinion. It is not clear from the record whether Ford's counsel intended to introduce these pages in addition to the already admitted Harborview medical records, or in place of the Harborview records. Tellier's counsel objected to the admission of these pages into evidence, claiming that Ford should not be allowed to select those pages of the medical records most beneficial to its case for admission into evidence. Judge Gonzalez sustained this objection, ordering all of the Harborview records to be placed into evidence. It is not clear from the record whether Ford or Tellier ultimately introduced the Harborview records into evidence.

The jury deliberated for about one hour before returning a unanimous verdict in favor of Ford. After the jurors were ex-

cused, the wife of plaintiff's counsel contacted juror John Samson. He told her that one of the trial exhibits contained evidence pertaining to Tellier's conviction and incarceration for the crime of sexual abuse of a minor. That exhibit was Exhibit B, the three-ring binder containing Tellier's medical records from Harborview Developmental Center.

Upon learning that Exhibit B contained evidence of Tellier's prior conviction, Tellier filed a motion for a new trial, arguing that the verdict had been tainted by the jurors' review of that evidence. In response to Tellier's motion, Ford produced the affidavits of John Samson and the jury foreman, Michael Mason. Both jurors stated in their affidavits that the document in question had not been seen by any of the jurors before the verdict was reached.[1]

The trial court held an evidentiary hearing at which it questioned both of these jurors extensively. Juror Mason, the jury foreman, stated unequivocally that the inadmissible evidence had not been seen by any juror before the deliberations were concluded and the vote was taken. Juror Samson, who stated that he did not pay attention to the other juror's activities during the deliberations, was unsure whether any of the jurors looked at Exhibit B during deliberations. He stated, however, that he believed that the inadmissible evidence was not discovered until after the deliberations were concluded and the vote taken.

Based on the record and the testimony of these two jurors, Judge Gonzalez made several findings of fact. He found that the jury did not discover the inadmissible evidence until after it had unanimously agreed on the verdict. He found that the medical records were available for inspection prior to trial and that the court had instructed the parties on at least two occasions during the trial to review the medical records to ensure that they did not contain inadmissible evidence. He also found that Ford had sought to admit only a small portion of Exhibit B, which did not contain any objectionable information, but that Tellier objected and offered instead the complete Exhibit B.

Judge Gonzalez denied Tellier's motion for a new trial, holding that the jury's verdict was not tainted by the inadmissible entries in Exhibit B, and that Tellier had offered the inadmissible evidence himself. Tellier appeals this decision.

## II.

Alaska Rule of Evidence 103(c) directs judges to conduct jury trials, "to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means." One means by which a judge may prevent inadmissible evidence from being suggested to the jury is to instruct the parties to review the documentary evidence for inadmissible information. After such an instruction, counsel for both parties are required to carefully review the evidence for inadmissible information.[2] If a party fails to object to inadmissible evidence contained in a certain document after the judge has specifi-

---

1. Tellier alleges that Ford violated Alaska Rule of Evidence 606(b) in taking these affidavits. That rule provides:

 Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

 Because Ford questioned Samson and Mason as to the effect on the jury of the references to Tellier's prior conviction contained in Exhibit B, and because those references were not "extraneous" for purposes of Rule 606(b), we find that Ford violated Rule 606(b) in taking the affidavits. We therefore do not consider the affidavits in deciding this case. *See* Commentary to Alaska R.Evid. 606(b).

2. Even if a judge does not specifically instruct counsel to review the exhibits for inadmissible evidence, all parties should diligently and conscientiously examine the exhibits for inadmissible evidence.

cally instructed counsel to review that document for inadmissible information, the party waives its right to later object to the admission of that information into evidence. *See Thomson v. Wheeler Constr. Co.*, 385 P.2d 111, 115 (Alaska 1963).

 In this case, Tellier's medical records from the Harborview Developmental Center were introduced into evidence as Exhibit B. On two occasions, Judge Gonzalez clearly instructed counsel to review Exhibit B to ensure that it did not contain objectionable information. Despite these instructions, neither party objected to the two references to Tellier's prior conviction which had not been redacted from Exhibit B. Because both references would have been discovered had counsel reviewed the exhibit, Tellier may not now predicate error upon the admission into evidence of the unredacted references.[3] In so holding, we note that the record contains no evidence that Ford's counsel knew that Exhibit B contained unredacted information ruled inadmissible in a pre-trial order.

Tellier argues that Ford introduced Exhibit B into evidence, and therefore he was not obliged to review the exhibit for objectionable information. This argument fails. Irrespective of which party introduced Exhibit B into evidence, both parties were required to comply with Judge Gonzalez' instructions to review Exhibit B for objectionable information. His counsel having failed to do this, Tellier cannot now benefit from that failure with an order for a new trial.

AFFIRMED.

---

3. Tellier's counsel claims that, after Judge Gonzalez instructed him to review the Harborview medical records for objectionable information, he reviewed copies of the Harborview medical records in the possession of his co-counsel's office. This did not relieve him of the duty to review the records which had actually been introduced into evidence.