*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, | ) ) ) ) | Supreme Court No. S-14981 |
| Appellant, | ) ) | |
| v. | ) ) | Superior Court No. 3KN-10-00532 CI |
| ALECIA RAE MULLINS, SHAYNA LYNN MULLINS, JACK DOMINICK, ANGELA MICHELLE McCOY aka ANGELA MICHELLE MULLINS aka ANGELA MICHELLE FULTON, and BARBARA DOMINICK (DECEASED), | ) ) ) ) ) ) ) ) ) ) ) ) | O P I N I O N<br><br>No. 6919 – June 27, 2014 |
| Appellees. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Ruth Botstein, Assistant Attorney General, Anchorage, Janell M. Hafner, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellant. Michael C. Kramer, Kramer and Associates, Fairbanks, for Appellees Alecia and Shayna Mullins.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.  INTRODUCTION

Two sisters reported that they were abused by their grandparents while they were entrusted to the legal custody of the Office of Children's Services (OCS).  The sisters sued OCS, and a jury awarded them substantial damages, concluding that OCS was responsible for 95% of their damages and that their grandparents were not responsible for any of their damages.  On appeal, OCS argues that this verdict should be set aside.  Because the evidence supporting the jury's allocation of fault was so insubstantial as to make the verdict plainly unreasonable, we conclude that OCS is entitled to a new trial.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Alecia Mullins was born in 1990, and Shayna Mullins was born in 1992. Throughout their childhood, their mother, Angela McCoy, abused drugs and alcohol and was involved in a violent and abusive relationship with her then-husband, Chris McCoy.

In September 1998, after receiving a report that Alecia and Shayna were at risk of immediate physical harm from Chris McCoy, OCS[1] took emergency custody of the children.  They were then placed with their grandparents, Jack and Barbara Dominick. Jack and Barbara were licensed as the Mullinses' foster parents from September 1998, until January 2001, when they became Alecia and Shayna's legal guardians.

While Alecia and Shayna were living with their grandparents, they were seeing a counselor to help them cope with the abuse they had experienced when they were younger.  The counselor, Linda Jacobsen, noted that Alecia was experiencing night

---

[1]  During a portion of the time relevant to this appeal, OCS was called the Division of Family and Youth Services.  We refer to the agency as OCS to avoid confusion.

terrors, and that night terrors could be a sign of sexual abuse. But Jacobsen testified at trial that she never suspected that anyone was abusing Alecia or Shayna while she was counseling them. She wrote a letter reporting her observations to Alecia and Shayna's guardian ad litem and an OCS employee.

In March 2001, Alecia and Shayna revealed that their grandfather had been sexually abusing them for some time. Alecia testified that the abuse lasted between three and a half and four years.

Jack left the home immediately after the abuse was disclosed. He pleaded no contest to three counts of sexual abuse of a minor shortly thereafter. Although Jack never returned to his home, there was testimony that Barbara met with him in a parking lot while Alecia and Shayna were present and frequently spoke with him on the phone in the evenings.

After Jack's abusive behavior was disclosed, Barbara became angry and violent. Alecia testified that Barbara slapped her in the face after Alecia told her something that Barbara "didn't like." Barbara also hit Alecia and Shayna with wooden spoons. OCS investigated these incidents but found that they did not constitute physical abuse. Some witnesses testified that Barbara's behavior reflected the fact that she was struggling to believe and accept that Jack had abused her grandchildren.

In June 2002, at her request, Barbara's guardianship was terminated and Alecia and Shayna were returned to their mother. However, this placement was short-lived; the family's home life quickly deteriorated, and the children were removed from their mother again in September 2003 when Angela was arrested for assaulting Chris.

Alecia and Shayna were then placed in foster care. There was testimony that the foster parents were abusive as well.

In January 2004, Alecia was placed with a friend's family. And in the same year, Shayna was placed with a different foster family. In 2006, Shayna was placed with

her biological father in Minnesota, and Alecia was permanently placed with two relatives in Washington. Both children were released from OCS custody following these placements.

### B. Proceedings

Alecia and Shayna filed a complaint against OCS and Jack Dominick in the Kenai Superior Court. They alleged that OCS had a duty to protect them from harm and that OCS negligently breached that duty. As to Jack, they alleged that he committed assault and battery against them and negligently harmed them.[2] OCS filed an answer and a third-party complaint against Angela McCoy and Barbara Dominick.[3]

During trial, the Mullinses developed several theories under which the jury could hold OCS liable. They argued, among other things, that OCS negligently failed to investigate Linda Jacobsen's 1999 report that Alecia was suffering from night terrors; that OCS failed to provide Alecia and Shayna with adequate mental health services while they were in OCS custody; that OCS negligently investigated reports that Barbara was physically abusing Alecia; and that OCS negligently failed to remove Alecia and Shayna from Barbara's custody after Barbara became abusive.

Before trial, OCS moved for partial summary judgment on the ground that several of the Mullinses' claims were based on conduct protected by discretionary function immunity. Although the superior court agreed that OCS "is entitled to immunity for discretionary functions on planning and policy matters," it concluded that "[a]pplication of the immunity provided by law will involve a claim-by-claim analysis based on the evidence presented" and that "the plaintiffs have asserted and presented

---

[2]     Before trial, the Mullinses sought to dismiss their complaint against Jack, explaining that "we've basically decided that we don't need to sue Jack directly anymore." But the court did not allow the dismissal.

[3]     Barbara passed away in 2006, before this litigation began.

sufficient potential evidence to withstand dismissal at this time." Therefore, the court denied the agency's motion but permitted OCS to "renew its request for immunity as to particular claims at the close of plaintiffs' case in chief."

Accordingly, OCS moved for a directed verdict based on discretionary function immunity at the close of the Mullinses' case in chief. The court denied that motion as well, concluding that the scope of OCS's liability would be addressed in the jury instructions. The court instructed the jury:

> In deciding whether OCS exercised reasonable care you may not find that OCS should have adopted different or better policies and procedures, or that it should have done something more than required by its policies and procedures.
>
> . . . .
>
> As a matter of law, you may not find OCS liable for placing Alecia and Shayna Mullins in foster care . . . . As a state agency, OCS is immune from liability for discretionary functions such as these.
>
> However, you may hold OCS liable for failing to comply with its own policies designed to protect the children under OCS care or for negligently carrying out its duties towards Alecia and Shayna Mullins.
>
> . . . .
>
> You may not find that OCS failed to exercise reasonable care toward Alecia Mullins and Shayna Mullins in making decisions regarding the allocation of money, employees and other resources. OCS cannot be held liable for its resource allocation decisions. You may only consider whether OCS employees who had responsibilities toward Alecia Mullins and Shayna Mullins exercised reasonable care.

OCS did not object to these instructions.

The jury returned a verdict stating that OCS was negligent with respect to both Alecia and Shayna and that the agency's negligence was a substantial factor in causing harm to both women. And although the jury was instructed that "Jack

Dominick, by virtue of his no contest plea, cannot deny" that he abused both Alecia and Shayna, it found that Jack's conduct did not cause harm to either Alecia or Shayna.

The jury awarded Alecia $350,000 in future economic damages, $500,000 in past non-economic damages, and $150,000 in future non-economic damages to Alecia and $400,000 in future economic damages, $500,000 in past non-economic damages, and $150,000 in future non-economic damages to Shayna. It allocated 95% of the fault for these damages to OCS, 5% to Angela McCoy, and none to either Barbara or Jack.

OCS moved for judgment notwithstanding the verdict or, in the alternative, a new trial, arguing that the jury's verdict was "contrary to the weight of the evidence, internally inconsistent, and plainly motivated by passion and prejudice." In particular, the agency argued that "the jury's allocation of zero fault to Jack Dominick is not supported by the evidence." The superior court denied the motion.

OCS appeals.

## III. DISCUSSION

### A. The Evidence Supporting The Jury's Allocation Of Fault Was So Insubstantial That The Verdict Was Plainly Unreasonable.

OCS argues that it was error to deny its motion for a new trial because the jury's allocation of 95% of the fault for the Mullinses' harm to OCS and 0% to Barbara and Jack Dominick was "irrational and against the weight of the evidence." The Mullinses respond that the allocation was proper for two reasons: first, because the Mullinses "made it clear that they were only pursuing negligence claims against OCS for its action and inactions *following* disclosure" of Jack's sexual abuse;[4] and second, that OCS can reasonably be held solely liable for the acts of other tortfeasors when OCS negligently fails to protect children from those tortfeasors.

---

[4] Emphasis added.

The denial of a motion for a new trial is reviewed for abuse of discretion.[5] We will reverse the superior court's decision to deny such a motion only "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[6]

Alaska Statute 09.17.080(a) provides:

> In all actions involving fault of more than one person, including third-party defendants and persons who have settled or otherwise been released, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating . . .
>
> . . . .
>
> (2)    the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages . . . .

"In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each person at fault, and the extent of the causal relation between the conduct and the damages claimed."[7]

Contrary to their representations on appeal, the Mullinses' arguments at trial were not limited to OCS's actions following the disclosure of Jack's sexual abuse on March 7, 2001. In particular, the Mullinses argued that a 1999 psychological assessment of Alecia, which suggested that Alecia's night terrors were symptomatic of sexual abuse, gave OCS notice that Alecia was suffering from sexual abuse at that time.

---

[5]    *Babinec v. Yabuki*, 799 P.2d 1325, 1327 (Alaska 1990) (internal quotation marks omitted).

[6]    *Kingery v. Barrett*, 249 P.3d 275, 283 (Alaska 2011).

[7]    AS 09.17.080(b).

And during closing argument, the Mullinses asked for $500,000 each in non-economic damages to compensate them for the year and a half of "preventable sexual abuse" that occurred between the time that OCS was allegedly notified that Alecia was being abused and the time that Alecia and Shayna reported the abuse in 2001.

The Mullinses also argue that it was proper for the jury to allocate 95% of the fault to OCS because OCS's negligence enabled Barbara and Jack to commit torts against the Mullinses. But courts in other jurisdictions have held that it is irrational to assign the majority of fault to a negligent tortfeasor when both negligent and intentional tortfeasors are responsible for harm suffered by a plaintiff.

For example, in *Pamela B. v. Hayden*, in which a rape victim sued the owner and the manager of the apartment building in which the rape occurred, a jury allocated 95% of the fault to the owner and manager and only 4% to the rapist.[8] The California Court of Appeal held that this allocation of fault was irrational:

> How can the man who grabbed Pamela from behind, held a knife to her throat, threatened to kill her, forced her to strip, raped her, forced her to orally copulate him, raped her again, stuffed her into the trunk of a car and left her there (as he escaped in her boyfriend's car) be only four percent at fault for her injuries? To ask the question compels the answer. He cannot.[9]

The California Court of Appeals overturned a similar allocation of fault in *Scott v. County of Los Angeles*.[10] Although the *Scott* court acknowledged that some fault

---

[8]    31 Cal. Rptr. 2d 147, 149-50 (App. 1994), *review granted*, 880 P.2d 112 (Cal. 1994), *review dismissed*, 889 P.2d 539 (Cal. 1995).

[9]    *Id.* at 160.

[10]    32 Cal. Rptr. 2d 643 (App. 1994).

might be attributed to a children's services agency that failed to investigate several reports of harm to a child, the court concluded that

> the evidence cannot be stretched to support an apportionment of 99 per cent of the fault to the negligent defendants and only 1 per cent to the person who filled a tub with scalding water, lifted [the child] into it and held her there until her flesh was burned to the bone. No reasonable jury could conclude [the abuser's] fault was as trifling as the jury's allocation would suggest.[11]

In this case, the jury was instructed that Jack committed at least one act of sexual abuse against both Shayna and Alecia, and there was exhaustive testimony at trial about the abuse committed by both Jack and Barbara. Given this evidence, it was simply irrational to conclude that Jack and Barbara were zero percent responsible for the results of the intentional (and even criminal) acts that they committed.[12] Because the jury's verdict was plainly unreasonable, it was an abuse of discretion to deny OCS's motion for a new trial.[13]

We therefore remand for a new trial. Because the special verdict form instructed the jury to award damages caused only by the conduct of the persons it found were liable to the Mullinses, and the jury concluded that neither Jack nor Barbara caused

---

[11]  *Id.* at 655-56.

[12]  *Cf. Grant v. Stoyer*, 10 P.3d 594, 597 (Alaska 2000) ("[E]vidence that the accident did not cause some injury to Grant was so completely lacking, slight, and unconvincing as to make the verdict plainly unreasonable and unjust.").

[13]  *See Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999) ("We will reverse a decision denying a new trial if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust." (internal quotation marks omitted)).

harm to the Mullinses, it did not award damages based on Jack's and Barbara's conduct. Therefore, the new trial must revisit damages as well as allocation of fault.

B.   **The Superior Court Should Examine The Mullinses' Allegations Of Negligence To Determine If OCS's Actions Are Protected By Discretionary Function Immunity.**

OCS also argues in its appeal that the trial court erred by permitting the jury to find it was liable for negligently performing various discretionary acts. It argues that such acts cannot be a basis for liability under Alaska law. The Mullinses respond that OCS failed to object to the jury instructions and the instructions on immunity do not constitute plain error.

Because we reverse on the ground that the jury's allocation of fault was irrational, we do not need to decide whether the superior court's approach to discretionary function immunity was plainly erroneous. However, we take this opportunity to clarify the proper procedure for ensuring that the jury does not hold the state liable for its discretionary acts.

Alaska Statute 09.50.250 provides that a person may bring an action in tort against the State of Alaska in any state court with jurisdiction over that claim. However,

> an action may not be brought if the claim . . . is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused . . . .[14]

---

[14]   AS 09.50.250.

Two varieties of agency action are not covered by discretionary function immunity: those involving no discretion and those involving "only discretion free from policy considerations."[15]

The first category includes actions that are required by agency regulations or policy. For example, in *State, Department of Corrections v. Cowles*, we held that, because Department of Corrections policy requires a parole officer to initiate a parole revocation proceeding in response to a "serious violation,"[16] an officer's response to a serious parole violation involves no discretion and, therefore, is not immune.[17] But because Department policy requires no particular response to a minor parole violation, an officer's response to such a violation *is* immune.[18]

The second category includes actions that do not require the consideration of broad social, economic, and political policy factors. For example, once the state has made the policy decision to maintain a highway for winter travel, its actions implementing that decision — such as determining how many workers or how much equipment should be used to maintain the highway — are not immune.[19] Such decisions

---

[15]     *R.E. v. State*, 878 P.2d 1341, 1349 (Alaska 1994).

[16]     Under the policy at issue in *Cowles*, a "serious violation" included "all felony behavior" as well as some serious misdemeanors. 151 P.3d 353, 360 (Alaska 2006).

[17]     *Id.* at 360-61.

[18]     *Id.* at 361.

[19]     *State v. Abbott*, 498 P.2d 712, 722 (Alaska 1972).

"simply do not rise to the level of governmental policy decisions calling for judicial restraint."[20]

Applying these principles, it appears that the jury instructions given in this trial did not adequately implement discretionary function immunity. In Instruction No. 28, the superior court wrote:

> As a matter of law, you may not find OCS liable for placing Alecia and Shayna Mullins in foster care . . . . As a state agency, OCS is immune from liability for discretionary functions such as these.
>
> However, you may hold OCS liable for failing to comply with its policies designed to protect the children under OCS care or for negligently carrying out its duties towards Alecia and Shayna Mullins.

As OCS notes, this instruction suggests that OCS may be held liable for failing to carry out its "duties," discretionary function immunity notwithstanding. "[D]uties" appears to refer to the eleven duties listed in Jury Instruction No. 23. But at least one of those duties involves discretionary functions.

For example, Instruction No. 23 provides that OCS has a duty "to protect children in the legal custody or supervision of OCS." The pre-1999 version of the OCS Child Protective Services Manual[21] provides:

---

[20]    *Id.*

[21]    This version of the Manual was superseded on July 1, 1999, and did not govern OCS's actions during all the times relevant to this appeal. We refer to the Manual here for demonstrative purposes only.

> The child welfare system must protect children. All child welfare protective activities and intervention must be toward the goal of protecting the child from harm. In the provision of services the safety of the child is always the first consideration in performing risk assessments, developing case plans, and identifying services for children and families. Safety of the child is paramount in all decisions [a]ffecting children.

But this broad, aspirational policy statement cannot be a basis for liability. It calls for no specific action and in no way cabins the discretion of OCS officials in carrying out the agency's mission.[22] And decisions about how best to protect the welfare of children, like decisions whether to initiate parole revocation proceedings following a minor parole violation, involve the balancing of social, economic, and political policy factors.[23] Therefore, to the extent that Instruction No. 28 suggests that OCS may be held liable merely for failing to "protect children," it misstates the law governing discretionary function immunity.[24]

In *Cowles*, we explained that "the allegedly negligent decisions in a particular case must be examined individually to determine if they are" protected by discretionary function immunity.[25] The trial court should attempt to rule on these issues during pre-trial motion practice. But if specific factual questions necessary to the trial

---

[22] *Cf. R.E. v. State*, 878 P.2d 1341, 1350 (Alaska 1994).

[23] *Cf. Cowles*, 151 P.3d at 361 ("[W]hen the parole officer is given a choice, the decision whether or not to seek to revoke parole involves the same weighing of policy matters that a parole board engages in when it makes the final parole revocation decision.").

[24] We express no opinion about whether OCS may be held liable for its failure to provide mental health services, its failure to conduct certain investigations, or any other act or omission alleged by the Mullinses.

[25] 151 P.3d at 359.

court's legal determinations need to be resolved by the jury, specific jury interrogatories should be used. In short, although the jury may need to decide the factual underpinnings of the trial court's conclusions, discretionary immunity decisions must remain with the judge.

We also note that the version of the OCS Child Protective Services Manual entered into the record was largely superseded in July 1999. That version of the Manual does not govern OCS's actions after the date it became obsolete. On remand, when it performs its discretionary function analysis, the superior court must look to the version of the Child Protective Services Manual that was in effect at the time of each of OCS's allegedly negligent actions.[26]

## IV.    CONCLUSION

The judgment of the superior court is REVERSED and this case REMANDED for a new trial.

---

[26]    OCS also argues that it was error to deny its post-verdict motion for remittitur, that the Mullinses did not provide sufficient evidence to prove their future economic damages, and that the Mullinses' closing argument was improper. Because we reverse on the grounds stated above, we do not reach these other claims.