*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RICHARD A. MATTOX, | ) | |
| | ) | Supreme Court No. S-16031 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-09-01695 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | No. 7170 – May 19, 2017 |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Benjamin I. Whipple, Palmer, for Appellant. Susan M. West, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Maassen, Bolger, Justices. [Winfree and Carney, Justices, not participating.]

STOWERS, Chief Justice.

## I. INTRODUCTION

In July 2009 Richard Mattox filed suit against the Department of Corrections (DOC) for injuries arising from an assault by another prisoner. Mattox alleged that DOC was negligent in failing to accommodate his requests for transfer to a different housing module prior to the assault and that DOC was negligent in permitting the correctional officer on duty to leave the module during the time the assault occurred.

The superior court granted DOC's motion for partial summary judgment regarding classification and housing assignments and then granted DOC's motion for summary judgment on all other causes of action. On appeal, we remanded for further proceedings because there was a material question of fact regarding the foreseeability of the assault.

At trial the parties discussed a jury instruction on discretionary function immunity, and the superior court gave the agreed upon instruction to the jury. The jury returned a verdict in favor of DOC. Following trial the judge invited the parties and counsel to meet informally with the jury. During that informal meeting, some of the jurors mentioned that the jury had applied the doctrine of discretionary function immunity when deciding whether DOC was negligent in permitting the correctional officer to leave the module unattended during the time Mattox was assaulted.

Mattox moved for a new trial on the grounds that the jury erroneously applied the doctrine of discretionary function immunity in reaching its verdict when that question should have been decided by the court before trial. The court denied that motion and Mattox appeals. We conclude that because Mattox consented to have the jury apply an accurate statement of discretionary function immunity to the facts as the jury found them, he waived any challenge to the jury's application of the doctrine and the superior court committed no error by allowing the jury to apply the doctrine rather than applying the doctrine itself sua sponte. We therefore affirm the superior court's denial of Mattox's motion for a new trial.

## II.    FACTS AND PROCEEDINGS

In July 2007 Richard Mattox and several other inmates were watching television in the Kilo housing module at Spring Creek Correctional Center in Seward.[1] Roxanne Dash, the correctional officer assigned to the Kilo module, briefly stepped away

---

[1]     *See Mattox v. State, Dep't of Corr.*, 323 P.3d 23, 25 (Alaska 2014).

from her desk to deliver paperwork to the module office. During the television show, another inmate, Vincent Wilkerson, told Mattox to be quiet.[2] Mattox turned to a friend and asked if Wilkerson had been addressing Mattox.[3] Wilkerson then punched Mattox on the left side of his face.[4]

Mattox developed a bloody nose as a result of the blow, and he used a nearby intercom to alert the control room that he needed medical attention.[5] The control room officer radioed Correctional Officer Dash, and she immediately returned to the television room. Mattox told Dash that he had been assaulted and eventually identified Wilkerson as his attacker. DOC later transported Mattox to Alaska Regional Hospital in Anchorage, where doctors diagnosed him with "[l]eft periorbital fractures," a "right maxillary sinus fracture[,] and a nasal fracture." After doctors performed surgery on Mattox, he returned to Spring Creek Correctional Center.

In July 2009 Mattox filed suit against DOC for injuries arising from the assault. Mattox alleged that DOC was negligent in failing to accommodate his requests for transfer to a different housing module prior to the assault and that DOC was negligent in permitting Correctional Officer Dash to leave the module during the time the assault occurred. The superior court granted DOC's motion for partial summary judgment regarding classification and housing assignments and then granted DOC's motion for summary judgment on all other causes of action. On appeal, we remanded for further

---

[2]     *Id.*

[3]     *Id.*

[4]     *Id.*

[5]     *Id.*

proceedings because there was a material question of fact regarding the foreseeability of the assault.[6]

The matter proceeded to trial in the superior court in January 2015. At trial, DOC addressed Mattox's claims that it ignored his requests for placement in a different housing module, that these requests should have indicated to DOC that an assault was likely to occur, and that DOC's refusal to move Mattox to another housing module facilitated the assault. Correctional officers testified that Mattox often requested transfer out of his general population housing module and into a quieter module. But correctional officers explained that Mattox did not qualify for placement in the units Mattox requested. Correctional officers also testified that Mattox had never expressed concern for his safety, reported threats from other inmates in his housing module, or requested protective custody independently of or in connection with his requests for transfer to another module.

DOC also addressed Mattox's claims that DOC was negligent because Correctional Officer Dash left the housing module and the assault occurred during her absence. Correctional officers and the assistant superintendent of the prison system explained that DOC policy permits module officers to briefly leave their desks to deliver paperwork to the module office, perform administrative duties, take bathroom breaks, obtain supplies, interview inmates in a more private setting, assist inmates with specific tasks, or respond to emergencies.

During trial the superior court held a hearing outside the presence of the jury to discuss proposed jury instructions. DOC proposed a jury instruction which read:

> You may not find that DOC failed to exercise reasonable care toward Richard Mattox because of how DOC made decisions regarding the allocation of money, employees, and other

---

[6]    *Id.* at 28-30.

resources. DOC cannot be held liable for its resource allocation decisions. For example, you may not find DOC negligent because it did not have cameras installed in each of its housing modules. You may only consider whether DOC employees who had responsibilities toward Richard Mattox exercised reasonable care, given the money, employees, and other resources available to them under the circumstances.

Mattox did not object to the DOC's proposed instruction. The trial judge ultimately announced her intention to instruct the jury as follows in Jury Instruction No. 13:

You may not find that DOC failed to exercise reasonable care toward Richard Mattox because of how DOC made decisions regarding the allocation of money, employees, and other resources. DOC cannot be held liable for its resource allocation decisions. You may only consider whether DOC employees who had responsibilities toward Richard Mattox exercised reasonable care.

Mattox also did not object to this modified instruction. The trial judge read Jury Instruction No. 13 aloud before the jury began its deliberations. The jury returned a verdict in favor of DOC.

Following trial, the judge invited the parties and counsel to meet informally with the jury. During that informal meeting some of the jurors mentioned that the jury had applied the doctrine of discretionary function immunity when deciding whether DOC was negligent for having left the module unattended by a correctional officer during the time Mattox was assaulted.

Mattox moved for a new trial.[7] He argued that the jury erroneously applied the doctrine of discretionary function immunity in reaching its verdict. He also argued that the DOC's practice and policy of allowing correctional officers to briefly leave

_____

[7]    *See* Alaska R. Civ. P. 59(a) ("A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice.").

common areas to attend to other matters was a "dangerous institutional practice" that increased the risk of harm to inmates. DOC opposed the motion and after oral argument the superior court denied the motion and entered judgment in favor of DOC.

Mattox appeals, arguing that Jury Instruction No. 13 was not meant to apply to the issue of whether DOC was negligent for leaving the module unattended, but rather that

> [DOC] had raised the state discretionary function immunity defense to excuse the prison's inoperable video monitoring system. . . . Neither through pre-trial motion practice, nor in the court and counsel discussions regarding jury instructions during trial, when the jury was excused, did anyone apply the discretionary function immunity defense to the context of floor officers leaving the mod[ule] unattended.

He explains that "[n]either party anticipated the jury's application of the discretionary function immunity doctrine to [DOC]'s practice of permitting the floor officer to briefly leave the mod[ule] unattended."

## III.   STANDARD OF REVIEW

"We have expressed great reluctance to interfere with a superior court's decision to deny a new trial, absent exceptional circumstances."[8] "The decision to grant or deny a new trial is . . . within the trial court's sound discretion."[9] "We review denial of a new trial under an abuse of discretion standard wherein we disturb the trial court's discretion only in the most exceptional circumstances to prevent a miscarriage of

---

[8]    *Marron v. Stromstad*, 123 P.3d 992, 1011 (Alaska 2005) (first citing *Alaska Children's Servs., Inc. v. Smart*, 677 P.2d 899, 901 (Alaska 1984); then citing *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003)).

[9]    *Id*. at 998 (citing *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002)).

justice."[10] "[G]enerally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty and deprives a party of a fair trial."[11]

" 'We review jury instructions de novo when a timely objection is made.' Absent a timely objection, we review only for plain error."[12] "Plain error will be found when an obvious mistake exists such that the jury instruction creates 'a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.' "[13]

## IV. DISCUSSION

### A. Mattox's Post-Trial Discussions With Jurors Were Not Admissible When Determining Whether To Grant His Motion For A New Trial.

Generally, under Alaska Evidence Rule 606(b) a court may not rely upon the jury's mental processes in reaching a verdict or a juror's testimony, affidavits, or other statements about what occurred during jury deliberations when determining whether to grant a new trial.[14] At the same time, Evidence Rule 606(b) carves out an exception to this general rule when "extraneous prejudicial information was improperly brought to the jury's attention or . . . any outside influence was improperly brought to

---

[10]     *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 83 (Alaska 2015) (quoting *Turner v. Municipality of Anchorage*, 171 P.3d 180, 185 (Alaska 2007)).

[11]     *West v. State*, 409 P.2d 847, 852 (Alaska 1966) (citing *State v. Gardner*, 371 P.2d 558, 561 (Or. 1962)).

[12]     *Alaska Fur Gallery*, 345 P.3d at 83-84 (quoting *Cummins, Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005)).

[13]     *Kingery v. Barrett*, 249 P.3d 275, 280-81 (Alaska 2011) (quoting *Ollice v. Alyeska Pipeline Serv. Co.*, 659 P.2d 1182, 1185 (Alaska 1983)).

[14]     Alaska R. Evid. 606(b); *see also Titus v. State*, 963 P.2d 258, 260 (Alaska 1998); *Larson v. State*, 79 P.3d 650, 654-60 (Alaska App. 2003).

bear upon any juror."[15] The exception is meant to "ensur[e] that verdicts are accurate and that they are reached through a fair process."[16]

In post-trial interviews, some jurors revealed that they had applied the discretionary function immunity doctrine to the question whether DOC was negligent in permitting correctional officers to briefly leave their posts in the modules. Those post-trial discussions with jurors formed the basis for Mattox's motion for a new trial. Mattox concedes that post-trial discussions with jurors are generally inadmissible in the superior court's consideration of a motion for a new trial. However, Mattox argues that when deciding whether DOC was negligent for leaving the module unattended during the time the assault occurred, both Jury Instruction No. 13 and the jury deliberations surrounding it were "extraneous prejudicial information" that impacted the jury's decision because Jury Instruction No. 13 was not meant to apply to that issue. We address each of these arguments in turn.

1.    **Jury Instruction No. 13 did not constitute extraneous prejudicial information under Alaska Evidence Rule 606(b).**

Mattox argues that "the jury's exposure to the unvetted discretionary function immunity [instruction] did, in and of itself, constitute 'extraneous prejudicial information . . . brought to the jury's attention' within the meaning of [Evidence] Rule 606(b), and could thus be considered by the court." We find this argument without merit.

---

[15]    Alaska R. Evid. 606(b).

[16]    *Titus*, 963 P.2d at 261 (citing 27 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 6075 (1990)).

In the context of Evidence Rule 606(b), " 'extraneous' information refers to information that reaches the jury other than through the normal trial processes."[17] In *Turpin v. State*, the Alaska Court of Appeals held that because a prosecutor's objectionable opening statement was brought to the jury's attention through normal trial processes, it was not extraneous information under Evidence Rule 606(b).[18] The court of appeals further explained that interpreting extraneous information to include the prosecutor's opening statement

> would essentially gut Rule 606(b), since it would allow impeachment of a verdict whenever the jurors heard improper arguments of counsel, improperly admitted evidence, or any questions or answers to which objections were sustained. Because claims of such errors arise at practically every trial, virtually any jury verdict would be subject to inquiry under [such a] reading of Rule 606(b).[19]

Similarly, in *Tellier v. Ford Motor Co.*, we affirmed the denial of a motion for a new trial despite the admission of medical records for jury consideration containing information that should have been redacted.[20] In part because the parties could have inspected those records before trial and because the court had instructed the parties to review the records to ensure that they did not contain inadmissible evidence, we concluded that the records did not constitute extraneous information.[21] And in *Titus v.*

---

[17]     *Turpin v. State*, 890 P.2d 1128, 1131 (Alaska App. 1995) (citing 2 STEPHEN A. SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL 777 (6th ed. 1994)).

[18]     *Id.* at 1130-31.

[19]     *Id.* at 1131.

[20]     827 P.2d 1125, 1127 & n.1 (Alaska 1992).

[21]     *Id.* at 1127-28.

*State*, we again confirmed that "information coming to the jury through the trial process cannot be considered extraneous."²²

In this case Jury Instruction No. 13 came to the jury through normal trial processes. Before trial, DOC proposed three jury instructions addressing the discretionary function immunity doctrine. Mattox did not object to DOC's proposed instruction No. 30, and the superior court proposed a modified version of this instruction. Neither DOC's original proposal nor Jury Instruction No. 13 contained language precluding application of the discretionary function immunity doctrine to whether DOC was negligent for leaving the module unattended during the time the assault occurred. Mattox stated that Jury Instruction No. 13 "seemed appropriate," and again did not object. The court then read that instruction aloud to the jurors and provided the jury with its written instructions for the jury's reference during deliberations.

Mattox cites three federal cases that he claims support his position that Jury Instruction No. 13 was itself extraneous information when applied to the issue whether DOC was negligent in permitting Correctional Officer Dash to briefly leave the housing module. However, unlike the jurors here, in these federal cases the jurors inadvertently or improperly learned of extraneous information that was never intended for their consideration.²³ In other words, the information the jurors received in these three cases

---

²² 963 P.2d 258, 260 (Alaska 1998) (citing *Tellier*, 827 P.2d at 1127 n.1; *Turpin*, 890 P.2d at 1131).

²³ *See United States v. Hall*, 85 F.3d 367, 368-69 (8th Cir. 1996) (ordering an evidentiary hearing to consider a new trial where jurors overheard the judge at a bench conference discussing the defendant's involvement in various illegal activities unrelated to the charges brought in that case); *United States v. Scisum*, 32 F.3d 1479, 1481-83 (10th Cir. 1994) (ordering a new trial when the judge met alone with a juror before the jury announced its verdict without alerting either party to the meeting until after the jury returned its verdict); *United States v. Bruscino*, 662 F.2d 450, 456-61 (7th Cir. 1981)
(continued...)

-10- **7170**

did not come through the normal trial process. We conclude that Jury Instruction No. 13 did not constitute extraneous information under Evidence Rule 606(b). Consequently, the juror statements upon which Mattox relied in his motion for a new trial were not admissible.

> **2.    Jurors' thoughts and analyses surrounding Jury Instruction No. 13 were not extraneous prejudicial information under Alaska Evidence Rule 606(b).**

Mattox also contends that the jurors' thoughts, analyses, and deliberations on whether to apply discretionary function immunity to DOC's decision to permit Correctional Officer Dash to leave the module unattended were extraneous. Mattox argues that "[b]y coming up with their own homebrew legal analysis . . . jury members improperly brought to the jury's attention 'extraneous, prejudicial information' within the meaning of [Evidence] Rule 606(b). The fact of the jury's exposure to this analysis should therefore be admissible for the court to consider." Mattox's argument suggests that a portion of the jury's deliberation was itself extraneous and led to the incorrect application of Jury Instruction No. 13 to the issue of unattended modules.

We have never directly addressed whether Evidence Rule 606(b)'s exception applies to a jury's application of jury instructions. However, we have previously recognized that a juror's pre-existing knowledge of a general nature — the type of knowledge and reasoning that a juror might use when applying a specific jury instruction to an issue raised at trial — does not constitute extraneous prejudicial

---

[23](...continued)
(ordering a new trial when the jurors mistakenly received documents not admitted into evidence, including a document containing references to the defendant's connection to the "Mexican Mafia" and a newspaper clipping about the trial).

information under Evidence Rule 606(b).[24]  Like pre-existing knowledge, a juror's interpretation and application of jury instructions also falls squarely within the rule's prohibition against questioning jurors about their mental processes.   Evidence Rule 606(b) provides that "a juror may not be questioned as to . . . the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith."[25]  Clearly, a juror's understanding of jury instructions — as a mental process that influences the juror to assent or dissent from a verdict — falls within this prohibition.  This result is consistent with the longstanding principle that a juror is not competent to impeach her own verdict[26] and we join those courts that have extended this basic principle to exclude a juror's general understanding and application of jury instructions from the definition of extraneous prejudicial

---

[24]     *See Titus*, 963 P.2d at 262 ("[A] juror who discusses his or her general knowledge during deliberations, such as a familiarity with x-ray technology, has not introduced extraneous prejudicial information into the jury room." (citing *Hard v. Burlington N. R.R. Co.*, 870 F.2d 1454, 1462 (9th Cir.1989))); *see also Larson v. State*, 79 P.3d 650, 654 (Alaska App. 2003) (concluding that the jurors' general knowledge regarding the characteristics of glass used in a construction vehicle and how loud a shot from a .22 caliber rifle would be does not constitute "extraneous prejudicial information").

[25]     Alaska R. Evid. 606(b).

[26]     *See Mattox v. United States*, 146 U.S. 140, 149 (1892).

information.[27] We conclude that the jurors' statements regarding their application of the discretionary function immunity doctrine and Jury Instruction No. 13 were inadmissible.

## B.	The Superior Court Did Not Err In Issuing Jury Instruction No. 13.

As explained above, Mattox's motion for a new trial is flawed under Evidence Rule 606(b), and Mattox may not rely on the jurors' post-trial statements to support his motion for a new trial. Mattox separately argues that the superior court plainly erred in failing to determine sua sponte whether the doctrine of discretionary function immunity applied to DOC's staffing policy permitting correctional officers to briefly leave their housing modules unattended. We address this argument without considering the inadmissible statements by the jurors.

Mattox notes that "the [superior] court made no pre-trial or mid-trial decisions on the application of the discretionary immunity defense," effectively leaving "the jury free to decide for itself the scope and application of the state discretionary function immunity doctrine." He argues that the superior court, by issuing Jury Instruction No. 13, erroneously "transferred the entire determination of [the discretionary function immunity] defense to the jury," and he takes issue with the fact that DOC "did not prove and the [superior] court did not rule that officer absence was tied to allocation of staffing resources and therefore [DOC] was entitled to discretionary immunity." Lastly, Mattox suggests that the language of the instruction itself was flawed because "it

---

[27]	*See Gale v. City of Tecumseh*, 156 F. App'x 801, 811 (6th Cir. 2005) (determining that Federal Evidence Rule 606(b) "contemplates only external interactions with the jury that may have tainted the deliberation process, and . . . 'explicitly disqualifies juror testimony regarding jurors' mental processes in connection with deliberations' " (quoting *United States v. Gonzales*, 227 F.3d 520, 525 (6th Cir. 2000))); *Campbell v. State*, 432 S.W.3d 673, 678 (Ark. App. 2014) (holding that "a juror's understanding of the jury instructions and its effect on her deliberation" cannot be used as a basis for granting a new trial under Arkansas's Evidence Rule 606(b) (emphasis omitted)).

conveys that questions of resource allocation and immunity are up to the jury." Mattox asserts that the superior court's failure to decide the matter and its decision to instead issue a jury instruction were plain error.

" 'We review jury instructions de novo when a timely objection is made.' Absent a timely objection, we review only for plain error."[28] "Plain error will be found when an obvious mistake exists such that the jury instruction creates 'a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.' "[29]

### 1.    The language of Jury Instruction No. 13 was not erroneous.

Instead of making its own decision on the applicability of discretionary function immunity, the superior court offered Jury Instruction No. 13 for the jury to decide whether DOC's conduct was protected by discretionary function immunity. On its face, Jury Instruction No. 13 is a correct statement of the law. Alaska Statute 09.50.250(1) grants the State immunity from suit for matters involving discretionary functions and the implementation of policy decisions.[30] "Discretionary

---

[28]    *Alaska Fur Gallery, Inc. v. First Nat'l. Bank Alaska*, 345 P.3d 76, 83-84 (Alaska 2015) (quoting *Cummins, Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005)).

[29]    *Kingery v. Barrett*, 249 P.3d 275, 280-81 (Alaska 2011) (quoting *Ollice v. Alyeska Pipeline Serv. Co.*, 659 P.2d 1182, 1185 (Alaska 1983)).

[30]    AS 09.50.250(1) ("A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in a state court that has jurisdiction over the claim. . . .  However, an action may not be brought if the claim . . . is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused."); *Estate of Arrowwood v. State*, 894 P.2d 642, 646 (Alaska 1995) ("It is well established that both legislative appropriations and executive department budget decisions are discretionary functions immune from judicial inquiry."); *Indus. Indem. Co. v. State*, 669 P.2d 561, 564-65 (Alaska 1983) ("Decisions regarding the allocation of scarce
(continued...)

-14-                                                                7170

function immunity 'seeks to ensure that private citizens do not interfere with or inhibit the governing process by challenging through private tort actions basic governmental policy decisions.' "[31] Under AS 09.50.250(1) the State and its agencies are immune from suit when the plaintiff's claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused."[32]

In determining whether a particular decision or action is immune, we have adopted a test "distinguish[ing] between decisions that involve basic planning or policy and those that are merely operational in the sense that they implement plans or carry out policy."[33] More specifically, "[p]lanning decisions 'fall under the exception because they involve formulation of basic policy' including consideration of financial, political, economic, or social effects of the policy. 'Normal day-by-day operations of the government' are not planning decisions and are not entitled to immunity under the discretionary function exception."[34] Under this analysis, "[a]ctions that are operational in nature, and therefore not entitled to discretional immunity, are those that involve either

---

[30](...continued)
resources are usually discretionary, and thus immune from judicial inquiry." (citing *Wainscott v. State*, 642 P.2d 1355, 1357 n.6 (Alaska 1982))).

[31]    *Steward v. State*, 322 P.3d 860, 863 (Alaska 2014) (quoting *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981)).

[32]    AS 09.50.250(1); *see also Steward*, 322 P.3d at 863.

[33]    *Steward*, 322 P.3d at 863 (quoting *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 976 (Alaska 2005)).

[34]    *Id.* (first quoting *Estate of Arrowwood*, 894 P.2d at 644-45; then quoting *State v. Abbott*, 498 P.2d 712, 720 (Alaska 1972)); *see also State v. Dep't of Corr. v. Cowles*, 151 P.3d 353, 358 (Alaska 2006).

no room for discretion or involve only discretion free from policy considerations."[35] The State does not need to prove that it actually made a considered decision or policy evaluation for a decision to be immune.[36] In particular, Alaska precedent establishes that "[d]ecisions about how to allocate scarce resources" will ordinarily be immune from judicial review.[37]

In light of our precedent, Jury Instruction No. 13 is a correct statement of the law. Jury Instruction No. 13 instructs:

> You may not find that DOC failed to exercise reasonable care toward Richard Mattox because of how DOC made decisions regarding the allocation of money, employees, and other resources. DOC cannot be held liable for its resource allocation decisions. You may only consider whether DOC

---

[35]     *R.E. v. State*, 878 P.2d 1341, 1349 (Alaska 1994) (citing *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988); *United States v. Gaubert*, 499 U.S. 315, 324-25 & n.7 (1991); *Johnson v. State*, 636 P.2d 47, 64-66 (Alaska 1981); *Japan Air Lines*, 628 P.2d at 936-38; *State v. I'Anson*, 529 P.2d 188, 192-93 (Alaska 1974); *Abbott*, 498 P.2d at 717-22)).

[36]     *State, Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 458 n.5 (Alaska 1997) (" '[S]ome jurisdictions require that a state or local governmental unit seeking to obtain the protection of discretionary function immunity show that a considered policy evaluation actually took place.' Alaska does not require such a showing." (alteration in original) (first quoting 57 AM. JUR. 2D *Municipal County, School, and State Tort Liability* § 123 (1988); then citing *Indus. Indem. Co. v. State*, 669 P.2d 561, 566 n.11 (Alaska 1983))).

[37]     *Adams v. City of Tenakee Springs*, 963 P.2d 1047, 1051 (Alaska 1998); *see also Estate of Arrowwood*, 894 P.2d at 646 ("It is well established that both legislative appropriations and executive department budget decisions are discretionary functions immune from judicial inquiry."); *Indus. Indem. Co.*, 669 P.2d at 564-65 ("Decisions regarding the allocation of scarce resources are usually discretionary, and thus immune from judicial inquiry." (citing *Wainscott v. State*, 642 P.2d 1355, 1357 n.6 (Alaska 1982))).

employees who had responsibilities toward Richard Mattox exercised reasonable care.

This instruction does not misstate the holdings in *Adams*, *Estate of Arrowwood*, and *Industrial Indemnity Co.*, which establish that allocation decisions, including decisions about how to allocate scarce resources like money or employees, are immune under the doctrine of discretionary function immunity.[38]

Mattox attempts to show Jury Instruction No. 13 was erroneous by arguing that it is the same one that we found "did not adequately implement discretionary function immunity" in our decision in *State, Department of Health & Social Services v. Mullins*.[39] Mattox is correct that Jury Instruction No. 13 is modeled on a portion of the jury instruction given in *Mullins*,[40] but we did not take issue with the portion Jury Instruction No. 13 adopted. Rather, in *Mullins*, we found the following, different language inadequate:

> As a matter of law, you may not find [the Office of Children's Services (OCS)] liable for placing [the plaintiffs] in foster care. . . . As a state agency, OCS is immune from liability for discretionary functions such as these.
>
> However, you may hold OCS liable for failing to comply with its own policies designed to protect the children

---

**38**     *Adams*, 963 P.2d at 1051; *Estate of Arrowwood*, 894 P.2d at 646; *Indus. Indem. Co.*, 669 P.2d at 564-65.

**39**     328 P.3d 1038, 1043 (Alaska 2014).

**40**     *Id.* at 1040 ("You may not find that OCS failed to exercise reasonable care toward [the plaintiffs] in making decisions regarding the allocation of money, employees and other resources. OCS cannot be held liable for its resource allocation decisions. You may only consider whether OCS employees who had responsibilities toward [the plaintiffs] exercised reasonable care.").

under OCS care or for negligently carrying out its duties towards [the plaintiffs].[41]

We explained that this portion of the "instruction suggest[ed] that OCS may be held liable for failing to carry out its 'duties,' discretionary function immunity notwithstanding. . . . But at least one of those duties involve[d] discretionary functions."[42] Our statement that "the jury instructions given in [*Mullins*] did not adequately implement discretionary function immunity" applied only to this portion of the instruction, not the more general discussion of discretionary function immunity mirrored in Jury Instruction No. 13.[43] We therefore conclude that the specific language of Jury Instruction No. 13 was not itself in error, as it does not contain an incorrect statement of the law.

### 2. The superior court did not plainly err by failing to determine whether the doctrine of discretionary function immunity applied to DOC's staffing policy.

Mattox again relies on our decision in *Mullins*, this time to argue that the superior court's failure to decide the issue of discretionary function immunity constituted plain error. In *Mullins* the plaintiffs sued the Office of Children's Services for negligence.[44] Pre-trial, "OCS moved for partial summary judgment on the ground that several of the [plaintiffs'] claims were based on conduct protected by discretionary function immunity."[45] The superior court denied OCS's motion but permitted OCS to

---

[41] *Id*. (second alteration in original).

[42] *Id*. at 1043.

[43] *Id*.

[44] *Id.* at 1040.

[45] *Id.*

"renew its request for immunity as to particular claims at the close of plaintiffs' case in chief."[46] Consequently, OCS moved for a directed verdict on discretionary function immunity grounds.[47] The court denied that motion and concluded that the scope of OCS's liability would be addressed through jury instructions.[48] While we did not base our decision on the superior court's approach to discretionary function immunity, we took the "opportunity to clarify the proper procedure for ensuring that the jury does not hold the [S]tate liable for its discretionary acts."[49] Following our decision in *State, Department of Corrections v. Cowles*, we explained,

> "[T]he allegedly negligent decisions in a particular case must be examined individually to determine if they are" protected by discretionary function immunity. The trial court should attempt to rule on these issues during pre-trial motion practice. But if specific factual questions necessary to the trial court's legal determinations need to be resolved by the jury, specific jury interrogatories should be used. In short, although the jury may need to decide the factual underpinnings of the trial court's conclusions, discretionary immunity decisions must remain with the judge.[50]

Mattox correctly observes that "the [superior] court made no pre-trial or mid-trial decisions on the application of the discretionary immunity defense" to DOC's policy permitting correctional officers to leave their modules unattended for brief periods of time, leaving the jury "free to decide for itself the scope and application of the state

---

[46]    *Id.*

[47]    *Id.*

[48]    *Id.*

[49]    *Id.* at 1043.

[50]    *Id.* at 1044 (quoting *State, Dep't of Corr. v. Cowles*, 151 P.3d 353, 359 (Alaska 2006)).

discretionary function immunity doctrine." During a hearing on Mattox's motion for new trial the superior court also acknowledged in its oral ruling that

> the proper procedure, which none of [them] followed, would have been for the court to ideally hold an evidentiary hearing prior to trial on the issues the parties reasonably could identify as speaking to the issue of discretionary immunity and to make rulings about what evidence would not be allowed, if any, because it was protected by that immunity. The alternative would have been a special verdict form that helped the court to preserve for itself the issues of discretionary immunity.

We agree with the superior court that it is best practice to reserve questions of discretionary function immunity for itself, but its failure to do so in this context was not error, as it was in *Mullins*. In *Mullins* OCS had expressly requested that the superior court decide the scope and application of discretionary immunity twice, once through a summary judgment motion and again through a motion for a directed verdict.[51] This required the superior court to follow the procedures laid out in *Mullins* and decide the issue for itself.[52] Instead, the court refused to decide the matter and issued an erroneous jury instruction.[53] In contrast, Mattox made no summary judgment or directed verdict motion regarding the issue, nor did he object to DOC's proposed instruction. When the superior court proposed a modified version of this instruction and presented it to both parties Mattox again did not object. Accordingly, the court gave the legally correct statement of the law to the jury. Thus, unlike *Mullins*, Mattox impliedly consented to have the jury apply an accurate statement of the law of discretionary function immunity,

---

[51]     *Id.* at 1040.

[52]     *Id.*

[53]     *Id.* at 1043.

-20-                                                                7170

as articulated by the superior court, to the facts as the jury found them. We therefore conclude that the superior court's failure to apply the doctrine for itself sua sponte was not error, let alone plain error.[54]

Lastly, "we review denial of a new trial under an abuse of discretion standard wherein we disturb the trial court's discretion only in the most exceptional circumstances to prevent a miscarriage of justice."[55] "[G]enerally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty and deprives a party of a fair trial."[56] Given that the superior court did not commit error, the court's decision to deny Mattox a new trial was not an abuse of discretion. In other words, disturbing the court's denial of a new trial is unwarranted and not necessary to prevent a miscarriage of justice.[57]

## V.    CONCLUSION

We AFFIRM the superior court's denial of Mattox's motion for a new trial.

---

[54]    Under Alaska Civil Rule 51, Mattox could not "assign as error the giving or the failure to give an instruction unless [he] object[ed] thereto before the jury retire[d] to consider its verdict, stating distinctly the matter to which [he] object[ed] and the grounds of the objection." Mattox had several opportunities to object, but did not. Instead he agreed with issuing the instruction. Now he alleges plain error on appeal, but we conclude that neither the superior court's approach to discretionary function immunity in this context nor the language of the instruction given was erroneous.

[55]    *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 83 (Alaska 2015) (quoting *Turner v. Municipality of Anchorage*, 171 P.3d 180, 185 (Alaska 2007)).

[56]    *West v. State*, 409 P.2d 847, 852 (Alaska 1966) (citing *State v. Gardner*, 371 P.2d 558, 561 (Or. 1962)).

[57]    We have not been asked to decide whether the jury's application of discretionary function immunity to DOC's policy of allowing officers to leave modules unattended for short periods of time was correct and we do not decide the issue here.