*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RICHARD A. MATTOX, | ) | |
| | ) | Supreme Court No. S-14587 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-09-01695 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | No. 6896 – April 18, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Benjamin I. Whipple, Palmer, for Appellant. Susan M. West, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

A former inmate brought an action against the Department of Corrections alleging that the Department negligently failed to protect him after he reported being threatened and that he was subsequently assaulted and seriously injured while in prison. The superior court granted summary judgment in favor of the Department, concluding that the inmate had not shown that a genuine issue of material fact existed on the

question whether the Department breached its duty to protect him from reasonably foreseeable harm. Specifically, the superior court concluded that the inmate's communication of the threat was too general to put the Department on notice that the inmate was at risk for the attack he suffered. The inmate appeals. We conclude that the inmate presented evidence that, taken as a whole, raised a genuine issue of fact as to the foreseeability of the attack he suffered. We therefore reverse the superior court's grant of summary judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

Richard Mattox was incarcerated at Spring Creek Correctional Center, housed in the Kilo module. Mattox, who is white, alleges that his then-cellmate, Aaron, who is African-American, repeatedly made threats of a racial nature. According to Mattox, Aaron made statements to the effect of "I don't like you. Your people were killing my people back in the day. You've got to get out or something's going to happen." According to Mattox, Aaron threatened him "every time [they] were together in [their cell]." Mattox understood the threat to mean that violence could come from any of "[Aaron's] people; that is, the black inmates in the mod[ule]." Mattox believed that the black inmates "wanted [him] out of the mod[ule]."

Mattox alleges that he made multiple requests to two different officers to be moved out of the Kilo module. He reports that he told the guards that the module was "too tough for [him]." Mattox was 47 years old, and he feared trouble with the "cocky, young" inmates housed there. He was particularly fearful of Aaron and Aaron's friends. Mattox claims that he submitted written transfer requests ("cop-outs") to prison officials in which he reported his fear, and that these documents are now missing from his prison file. Mattox claims that the Department of Corrections denied his requests, and he was not transferred from the Kilo module. Mattox also asserts that an officer responded to

one of his transfer requests by saying: "There are racial tensions in here and you're going to have to work it out."

On July 22, 2007, Mattox was watching television in a common area with several other inmates. No guard was posted in the common area. The security cameras in the room had been out of order for some time. Another inmate, Vincent Wilkerson, was seated in the row of chairs in front of Mattox. Mattox alleges that Wilkerson, who is African-American, was a friend of Aaron; the two played basketball together and ate together. At some point during the television show, Wilkerson turned around and told Mattox to "[s]hut the f...k up." Mattox turned to the inmate seated next to him and asked whether Wilkerson had been speaking to him. When Mattox turned back, Wilkerson was standing in front of him and suddenly punched Mattox in the left cheek. Mattox sought help from a corrections officer in an adjacent room. Mattox had not had any previous interaction with Wilkerson and could not identify him by name.

The blow to Mattox's face caused bilateral orbital fractures, a sinus fracture, and a nasal fracture. Mattox was hospitalized for treatment of his injuries, undergoing surgery that included the placement of six titanium plates and 200 titanium screws in his skull. He asserts that he continues to suffer from sinus and visual problems associated with the injuries.

**B.    Proceedings**

After his release from prison, Mattox filed suit in connection with the attack by Wilkerson, alleging that the Department was negligent in various ways. The Department moved for partial summary judgment on certain claims, and the superior court granted partial summary judgment, leaving intact Mattox's general claim that the Department failed to protect him after he put the Department on notice of the threat to his safety. The Department then moved for summary judgment on the remaining claim. After hearing oral argument, the superior court granted summary judgment in favor of

the Department, reasoning that "Mattox has failed to show a material fact exists that the [Department] was placed on notice of a specific threat of harm against Mattox." Mattox filed a motion for reconsideration, concerned that the court's order did not address his argument "that the [Department] should be estopped from contending that [Mattox's] transfer requests provided the [D]epartment with [an] insufficiently-specific threat of harm since his written requests were misplaced while in the [Department's] custody and control." The motion was denied, and the superior court dismissed Mattox's claim against the Department with prejudice. Mattox appeals.

## III.    STANDARD OF REVIEW

As we recently explained:

We review a grant of summary judgment de novo. We review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor. A grant of summary judgment is affirmed when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law. . . . Whether the evidence presented a genuine issue of material fact is a question of law that we independently review.[1]

Summary judgment is generally disfavored on disputed questions of tort duty.[2] We have held that summary judgment is appropriate "where the only reasonable inference from the undisputed facts is that one party owed another no duty whatsoever—or owed a duty clearly and vastly narrower in scope than the one that the

---

[1]    *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013) (first omission and alteration in original) (footnotes and internal quotation marks omitted).

[2]    *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203 (Alaska 1998).

other party asserts in opposing summary judgment."[3] However, "[i]n cases where no one disputes the existence of a duty running from one party to another, we have disfavored summary adjudication of the precise scope of that duty, or of whether particular conduct did or did not breach it (i.e., constitute negligence)."[4]

## IV. DISCUSSION

### A. The Department Has A Duty to Protect Inmates In Its Care From All Reasonably Foreseeable Harm.

The Department of Corrections owes a duty to inmates to exercise reasonable care for the protection of their lives and health.[5] We have not previously considered whether assaults by other inmates fall within the scope of a jailer's duty to protect, but our precedents point in that direction, permitting liability even for intentional harmful acts, including assault by prison staff as well as suicide.[6] There is no persuasive legal or policy argument why violence between persons in the Department's custody should be treated differently. Courts in other jurisdictions considering this issue have

---

[3]    *Id.*

[4]    *Id.*; *see also Maddox v. River & Sea Marine, Inc.*, 925 P.2d 1033, 1035 (Alaska 1996) (observing that summary judgment frequently is improper on negligence issues, including foreseeability and scope of duty, because of "the highly circumstantial judgments" that must be made).

[5]    *Wilson v. City of Kotzebue*, 627 P.2d 623, 628 (Alaska 1981).

[6]    *B.R. v. State, Dep't of Corr.*, 144 P.3d 431, 435-36 (Alaska 2006) (reversing grant of summary judgment to the Department on claim that the Department negligently failed to protect plaintiff from sexual assault after she notified the Department she had previously been sexually assaulted by the same medical technician and requested protection); *Joseph v. State*, 26 P.3d 459, 471 (Alaska 2001) (explaining that an intentional act of suicide may not be a superceding cause, relieving the jailer of a duty to prevent that act, if the act was reasonably foreseeable).

reached the same conclusion as we do here.[7]  As the New York Court of Appeals observed in a prisoner assault case, "[h]aving assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates, even from attacks by fellow inmates."[8] Kansas's high court came to a similar conclusion in a case where the victim was not even in prison but had merely been placed in handcuffs on a city sidewalk when he was attacked by a person from whom an attack was not unforeseeable.[9]  And the Department does not contest the general proposition that the duty to protect encompasses the duty to protect inmates from reasonably foreseeable assaults by other inmates.  Mattox's case, therefore, does not present a situation in which "one party owed another no duty whatsoever—or owed a duty clearly and vastly narrower in scope" than the one the non-moving party asserts in opposing summary judgment.[10]  Rather, the dispute here is over the precise scope of that duty.

The Department contends that prison officials are required to act only when a report of a threat communicates an "immediate, identifiable, and specific danger."

---

[7]     *See, e.g.*, *Jackson v. City of Kansas City*, 947 P.2d 31, 44 (Kan. 1997) (affirming denial of summary judgment for state in negligence suit by man handcuffed and placed on ground by police officers and subsequently attacked by person with whom police knew he had been fighting); *see also Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1063-64 (Nev. 2007) (explaining that "prisons and prison officials must exercise reasonable and ordinary care to prevent violence between inmates," in negligence suit arising from attack on inmate previously involved in brawl); *Sanchez v. State*, 784 N.E.2d 675, 678 (N.Y. 2002) (rejecting summary judgment for state in negligence suit brought by maximum security prison inmate attacked by unknown persons).

[8]     *Sanchez*, 784 N.E.2d at 678.

[9]     *Jackson*, 947 P.2d at 41.

[10]     *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203 (Alaska 1998).

According to the Department, anything less is insufficient as a matter of law to make an attack reasonably foreseeable. In support of this argument, the Department draws our attention to numerous federal cases in which courts have rejected claims arising from inmate-on-inmate violence because of the lack of specificity or imminence of the alleged threats.[11] But the Department's authority for its position is primarily cases brought either pursuant to 42 U.S.C. § 1983[12] or as *Bivens* actions under the United States Constitution.[13] Without making any attempt to distinguish between the relevant federal law and Alaska's tort law, the Department declares that "inmates are entitled to relief only when their injury is objectively serious *and* prison officials act with deliberate indifference to the inmate's safety" (emphasis in original).[14]

---

[11]    *See, e.g.*, *Dale v. Poston*, 548 F.3d 563 (7th Cir. 2008).

[12]    42 U.S.C. § 1983 (2006) provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[13]    *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (establishing that damages are available from federal officers to vindicate constitutional guarantees).

[14]    In addition to the § 1983 and *Bivens* cases, the Department cites a selection of cases dealing with state-law negligence claims, but we find the authority unpersuasive. The case with perhaps the most relevance to this case, *Baker v. State*, *Dep't of Rehab. & Corr.*, 502 N.E.2d 261 (Ohio App. 1986), provides facts too thin to make any meaningful comparison, and furthermore is a case that was decided after trial, not at the summary judgment stage.

We reject this proposed standard. As the superior court also recognized, the "deliberate indifference" standard simply does not apply to a state-law negligence claim.[15] The Department has provided no convincing rationale for why we should replace our negligence standard with the deliberate-indifference standard in the prison context. Nor has the Department explained why reasonable foreseeability requires communication of an "immediate, identifiable, and specific danger." Evidence of specific warnings that identify potential assailants would certainly help to raise a genuine issue of fact as to foreseeability, as would evidence of an immediate threat of harm. But a threat need not meet the requirements set out in the Department's exacting formulation

---

[15]    As the Seventh Circuit has explained, a plaintiff's

> burden on a negligence claim is far less than his burden on a § 1983 deliberate-indifference claim. Whereas [plaintiff] ha[s] to show that . . . officers knew about a substantial risk to [his] health and safety to sustain a § 1983 claim, negligence law exists to deal with the very types of allegations [plaintiff] made here — that certain individuals *should* have acted differently in light of the duties applicable to them, and that their failure to abide by the relevant standard of care caused [plaintiff] personal injury.

*Grieveson v. Anderson*, 538 F.3d 763, 780 (7th Cir. 2008) (emphasis in original) (internal citations omitted); *see also Dale v. Poston*, 548 F.3d at 571 (affirming summary judgment in *Bivens* action where inmate provided officers only general information about a threat of violence against him, and noting that more than negligence by officers is required to prove violation of Eighth Amendment). We also note that in one of the federal cases in the Department's string of citations, *Cooper v. Bush*, No. 3:06-CV-653-J-32TEM, 2006 WL 2054090 (M.D. Fla. July 21, 2006), the court rejected the inmate's allegation of danger largely on the basis that in several of the more than 70 frivolous cases the inmate had filed in that court, he claimed to have committed suicide already and threatened to "do it again" if his concerns were not addressed. *Id.* at *1 n.3.

to be reasonably foreseeable. Traditional negligence law does not require that,[16] and we decline to depart from the well-established standard. We instead reaffirm our prior holding that a jailer has a duty to protect prisoners in its care from all reasonably foreseeable harm.[17]

The scope of the Department's duty under our negligence standard will be determined by the factual circumstances.[18] There are many circumstances in which an attack might not be reasonably foreseeable. As we have recognized, the duty to protect is not limitless — the prison "should not be the insurer of the prisoner's safety."[19] But there are also circumstances, including some reports of threats, which could make an attack reasonably foreseeable.[20] The question before us is whether Mattox has raised a

---

[16] *See Sanchez v. State*, 784 N.E.2d 675, 679 (N.Y. 2002) ("The strict requirement of specific knowledge for foreseeability . . . redefines the traditional standard of reasonableness that has long been the touchstone of the law of negligence, and it cuts off consideration of other factors that have previously been found relevant to foreseeability.").

[17] *See Joseph v. State*, 26 P.3d 459 (Alaska 2001).

[18] *See Wilson v. City of Kotzebue*, 627 P.2d 623, 628-29 (Alaska 1981) ("[T]he amount of care required must be commensurate with the amount of risk or responsibility involved, i.e., it is what is reasonable and prudent under the circumstances.") (citation omitted).

[19] *Joseph*, 26 P.3d at 477.

[20] *See, e.g.*, *B.R. v. State, Dep't of Corr.*, 144 P.3d 431, 435 (Alaska 2006) (noting that the Department had a duty to protect an inmate from sexual assault by an employee whom the inmate had alleged had sexually assaulted her before); *see also Grieveson*, 538 F.3d at 768-69, 780 (reversing a grant of summary judgment to the state on a claim that the state negligently failed to protect where plaintiff requested a transfer because he believed he was at risk and had submitted complaints after several previous attacks).

genuine issue of fact as to the foreseeability of the attack by Wilkerson; if so, then resolving the case on summary judgment was improper.[21]

## B. It Was Error To Grant Summary Judgment For The Department.

The superior court properly rejected the Department's incorrect formulation of the standard, but it was error to conclude that the attack by Wilkerson was unforeseeable as a matter of law even under the correct standard of reasonable foreseeability.

If Mattox had failed to present any evidence of a connection between the information of which the Department was on notice and the attack by Wilkerson, summary judgment might have been appropriate here.[22] That is, if the assault were entirely unrelated to the threat of harm about which the Department was on notice, holding the Department liable might indeed make the Department the "insurer of the

---

[21] *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013). We emphasize that the inquiry into reasonable foreseeability is necessarily fact-based and that this single legal standard will result in different conclusions in different cases. There is limited value, therefore, in relying on cases in which courts applying the reasonable-foreseeability test have found that a particular assault was not foreseeable under the circumstances. The superior court relied on *Cupples v. State*, 861 P.2d 1360 (Kan. App. 1993), a case that is similar in some respects to the present case but is factually distinguishable. In that case, an inmate was attacked by another inmate with whom she had never had any problems. *Id.* at 1363-64. As in *Cupples*, Mattox did not anticipate violence from the attacking inmate and did not warn prison officials about that person in particular. But in *Cupples* there was no meaningful link between the reported threat and the eventual attack; the only connection was that the attack occurred in the room of an inmate who had once threatened Cupples (but with whom Cupples had later reconciled). *Id.* at 1363. As we discuss below, Mattox makes out a more substantial connection, making summary judgment improper here.

[22] Although the Department disputes whether Mattox submitted requests to transfer, we must draw all factual inferences in favor of Mattox. *Kalenka*, 305 P.3d 346, 349 (Alaska 2013).

prisoner's safety."[23] The only limit on the Department's liability in that case would be the self-control of its inmates, as any attack by one inmate on another could be deemed reasonably foreseeable.

But Mattox did provide evidence of a connection. He described circumstances in the module that, taken as a whole, raise a factual question as to the foreseeability of the attack he suffered. He claims that he told the officers that the module was "too tough for [him]." He says he told them that he feared trouble with the "cocky, young" inmates there. And although his allegation is phrased ambiguously, he seems to claim that he told officers that he was afraid of "his roommate or his roommate's friends" and that Aaron was "friends with . . . Wilkerson" and associated with him on the basketball court and at mealtimes. These last claims are key factual assertions that the superior court appears to have overlooked. If prison officials were on notice of Mattox's fear of Aaron's friends and of Aaron's friendship with Wilkerson, they had considerably more notice of the risk of attack than if all they knew was that Mattox generally feared for his safety. Mattox's identification of his potential attackers — Aaron or *Aaron's friends* — makes foreseeability a much closer question.

Mattox further asserts that prison officials were aware specifically of racial tension in the module and put the burden on Mattox to defuse it (or handle the consequences if he could not). According to Mattox, an officer remarked on the racial tension in the module on several occasions. Mattox alleges that in response to one of his complaints, an officer told him: "There are racial tensions in here and you're going to have to work it out." The response suggests that a Department official not only knew of racial tension, but also told Mattox that he would have to address the problem if he were to avoid trouble. This acknowledgment of the need for Mattox to take some action

---

[23]    *Joseph*, 26 P.3d at 477.

-11-                                                                            6896

clashes with the Department's claim that an attack on Mattox was completely unforeseeable; if there was no foreseeable risk of harm, there would be no need for Mattox to "work it out."

The Department attempts to isolate particular facts which, taken alone, may have been insufficient to put the Department on notice of the attack that Mattox suffered. For example, the Department stresses that Mattox did not identify Wilkerson in advance, making much of Mattox's statement in his affidavit that he "couldn't explain in what form the violence would come, or from whom exactly, or when, because [he] didn't know this [himself]." The Department argues that because Mattox could not identify Wilkerson as his potential assailant (and could not name him after the attack), the attack was unforeseeable as a matter of law. The Department also focuses on Mattox's allegation that there was racial tension in the module, arguing that evidence of the mere existence of racial tension is too vague to trigger the Department's duty to protect.

The Department may be correct that each of these facts, viewed alone, could be insufficient to create a genuine factual dispute as to foreseeability. And it is true that if Mattox had been able to identify Wilkerson as his potential assailant, or had provided evidence that Wilkerson bore racial animosity toward him, his evidence of foreseeability would be even stronger. But the fact that Mattox could not provide the level of detail that the Department would desire does not make the attack unforeseeable as a matter of law. The Department's duty to protect is not limited by an inmate's inability to predict the precise nature and time of the assault, or the identity of his attacker. As the New York Court of Appeals recognized in *Sanchez*, "[the inmate's] testimony that the attack came as a complete surprise to him cannot be the measure of the duty of the State, as his custodian, to safeguard and protect him from the harms it

should reasonably foresee."[24]  In determining the scope of the Department's duty, we consider all of the circumstances of which the Department was on notice, including the racial atmosphere of the module, information about inmate relationships, and Mattox's identification of potential assailants.  When we consider all of these circumstances — in particular Mattox's assertions that he reported that he feared Aaron's friends and that Wilkerson was one of Aaron's friends — we conclude that Mattox has raised a genuine issue of fact as to foreseeability.

We recognize that the precise substance and extent of Mattox's communications to prison officials remain somewhat unclear because his discovery responses on certain issues are ambiguous.  But his statement that "particularly, [he] was afraid of trouble from his roommate or his roommate's friends" closely follows his assertions that "[r]equests were made to [correctional officers]" and that "[h]is requests were refused."  We must give him the benefit of reasonable inferences, and the question of the notice provided to the correctional officers is a factual question to be developed at trial.  Our summary judgment standard requires that we view the available facts in the light most favorable to Mattox as the non-moving party.  Viewing these facts in that light, we conclude that Mattox raised a genuine issue of fact as to whether the Department was on notice of the risk of attack not only from Mattox's cellmate, Aaron, but also from other inmates associated with Aaron.[25]

---

[24]    *Sanchez v. State*, 784 N.E.2d 675, 679 (N.Y. 2002).

[25]    Mattox also contends that because the Department lost his written transfer requests, the Department should be estopped from complaining of any deficiencies in the notice of harm.  The Department correctly notes that  Mattox's claim is better understood as one of spoliation of evidence. *See Doubleday v. State, Commercial Fisheries Entry Comm'n*, 238 P.3d 100, 106 (Alaska 2010); *see also Sweet v. Sisters of Providence in Wash.*, 895 P.2d 489, 490-93 (Alaska 1995).  This will be a matter for the trial court to
(continued...)

## V.    CONCLUSION

The judgment of the superior court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

---

**25**(...continued)
address on remand.  But in evaluating Mattox's motion for summary judgment, we draw all reasonable factual inferences in his favor.  Thus, even without production of the written transfer requests, we must assume that Mattox requested a transfer.  We have assumed the truth of Mattox's allegations, and on the basis of those allegations have concluded that summary judgment was improper.