*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RADENKO JOVANOV, | ) | |
| | ) | Supreme Court No. S-15950 |
| Appellant, | ) | |
| v. | ) | Superior Court No. 3AN-12-10167 CI |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | No. 7199 – September 15, 2017 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Radenko Jovanov, pro se, Wasilla, Appellant. Susan G. Wibker, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Maassen and Bolger, Justices. [Winfree and Carney, Justices, not participating.]

STOWERS, Chief Justice.

## I. INTRODUCTION

On October 6, 2010 Corrections Officer Nelson Robinson was supervising a prison module of about 50 inmates at the Anchorage Correctional Complex, including Radenko Jovanov and Alando Modeste. Modeste had been transferred to Anchorage from Palmer that morning. Modeste approached Jovanov while he was in line for the telephone, and he told Jovanov that he wanted them to request placement in separate

modules because Modeste was related by marriage to the victim of Jovanov's crime. Modeste then punched Jovanov on the left side of the head and pushed his head into the wall, requiring Jovanov to obtain medical treatment for his injuries.

Jovanov sued the Department of Corrections (DOC), Officer Robinson, and Modeste for his injuries, alleging that (1) the assault was foreseeable and therefore DOC should have prevented it; (2) Officer Robinson failed to respond promptly to the argument and prevent further injury to Jovanov; and (3) DOC was negligent in understaffing the prison unit and placing the officer's desk out of view of the telephone. DOC counterclaimed for the cost of the medical treatment Jovanov received.

The superior court granted summary judgment in favor of Jovanov against Modeste on the issue of liability, and in favor of DOC's counterclaim for medical costs. We affirm the superior court's decision granting summary judgment in favor of DOC on Jovanov's negligence claims against it; the assault was not foreseeable, and therefore DOC cannot be negligent on these grounds. Further, DOC's staffing decisions and its placement of the guard's duty station are immune policy decisions that cannot form the basis of a negligence claim. We reverse the superior court's grant of summary judgment in favor of DOC on its counterclaim against Jovanov for the cost of medical care provided to him and remand for further proceedings. We also remand for further proceedings regarding Jovanov's negligence claim against Modeste.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

On the morning of October 6, 2010, DOC transferred inmate Alando Modeste from the Palmer Correctional Facility to the Anchorage Correctional Complex and placed him in the same prison module, or "mod," as Radenko Jovanov, another

inmate.[1]  That afternoon at the Anchorage Correctional Complex, Corrections Officer Nelson Robinson was the sole officer supervising the prison mod of about 50 inmates, including Jovanov and Modeste.  At the time of the incident, Officer Robinson was working at his desk computer in the mod helping an inmate with an online account.  The other inmates were playing games, watching television, and talking on the telephone.

Jovanov did not know Modeste personally prior to the day of the assault.  When Jovanov got in line to use the telephone, Modeste approached him.  Modeste asked Jovanov to talk privately in his cell, but Jovanov told Modeste that he had just entered the line to use the telephone and that they could talk there.  The men continued their brief conversation behind the stairs near the telephone.  The stairs blocked Officer Robinson's view of the men, and Jovanov admitted that Officer Robinson was positioned so that he could not have heard Modeste ask Jovanov to talk privately in his cell.  Modeste then told Jovanov that he wanted them to request placement in separate mods.  Jovanov was incarcerated for his conviction of a sex crime involving a minor who was related to Modeste by marriage, and Modeste did not want to be in the same mod as Jovanov.  Following their brief conversation, Modeste punched Jovanov on the left side of the head, knocking Jovanov to the ground, and pushed his head into a wall.  Jovanov explained that he became apprehensive when Modeste mentioned Jovanov's crime, but Modeste did not threaten or physically restrain Jovanov during their conversation; therefore, Jovanov did not move away or call for help prior to the assault, explaining that he had "no reason" to do so before Modeste assaulted him.

Security cameras recorded a video of the incident.  The video shows that Jovanov and Modeste were behind the stairs for about one minute before the assault.  In the video recording, none of the other inmates looked in the direction of the assault

---

[1]  A module consists of cells surrounding an open common area.

before it occurred. But most of the inmates looked in the direction of the assault shortly after Modeste struck Jovanov.

Officer Robinson heard the scuffle near the stairs and looked in the direction of the assault after Modeste struck Jovanov. Officer Robinson responded almost immediately, at most five seconds after the assault. He rose from his desk, ordered the other prisoners into lockdown,[2] and called for backup officers. For safety and security reasons, DOC protocol requires that an officer ordering a lockdown wait for backup before breaking up a fight. However, Officer Robinson believed that the other inmates were following his lockdown order, observed the fight between Jovanov and Modeste, assessed the situation, and decided that he could safely stop the assault before backup officers arrived. Officer Robinson then intervened to stop the assault.

Jovanov was treated for his injuries at Alaska Regional Hospital. Modeste faced criminal charges following the assault, and he ultimately pleaded no contest to a reduced charge of reckless endangerment.[3]

### B.    Proceedings

In October 2012 Jovanov sued DOC, Officer Robinson, and Modeste for his injuries. This appeal principally addresses his claims against DOC and Officer Robinson.[4] In his First Amended Complaint, Jovanov claimed that DOC was negligent

---

[2]    Upon receiving a lockdown order, inmates are supposed to return to their cells. The officer on duty is then supposed to secure the cell doors.

[3]    *See Modeste v. State*, No. 3AN-10-13049 CR (Alaska Dist. Ct., Nov. 29, 2011).

[4]    Pursuant to AS 09.50.253(c), the Attorney General certified that Officer Robinson was acting within the scope of his employment, and the court upheld this certification after a *Heisy* hearing. *See State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1090-91 (Alaska 2012). The court dismissed Officer Robinson and substituted DOC in

(continued...)

because (1) Modeste's attack on Jovanov was foreseeable and DOC negligently failed to prevent the attack; (2) Officer Robinson negligently failed to take immediate action to stop the assault as it occurred; and (3) DOC negligently placed only one officer in the mod and negligently placed the officer's desk in a location that prevented Officer Robinson from observing the inmates in line for the telephone. Jovanov also sued Modeste alleging that as the aggressor he was liable for injuries from the assault. DOC counterclaimed for the cost of Jovanov's medical treatment stemming from the assault under AS 33.30.028.[5] DOC moved for summary judgment on Jovanov's negligence claims, and Jovanov moved for summary judgment against Modeste on the issue of liability. The superior court granted Jovanov's motion against Modeste based on Modeste's criminal conviction for the assault. The superior court also granted DOC summary judgment on Jovanov's negligence claims. The court found that the evidence, viewed in the light most favorable to Jovanov, was insufficient to allow a reasonable jury to conclude that Officer Robinson and DOC were negligent in failing to stop a foreseeable assault or in failing to promptly separate the parties before the assault occurred. And the court concluded that Jovanov's claims regarding inadequate staffing and negligence in setting up the prison mod were barred by discretionary function immunity under AS 09.50.250(1). The court denied Jovanov's motion for reconsideration.

---

[4](...continued)
his place. The parties do not challenge this ruling, and Officer Robinson is no longer a party to this case.

[5]     Under this statute, DOC is entitled to recover the cost of some medical care from prisoners. *See* AS 33.30.028. *See also Hendricks-Pearce v. State, Dep't of Corr.,*(*Hendricks-Pearce v. State II),* 323 P.3d 30, 36-38 (Alaska 2014). (plurality opinion)

The superior court also granted DOC summary judgment on its counterclaim for medical expenses. Jovanov opposed the entry of judgment on DOC's counterclaim; he argued that he needed to review the medical records that supported each billing item and that in light of our decision in *Hendricks-Pearce v. State, Department of Corrections*,[6] his lack of money, his status as the victim of a crime rather than the perpetrator, and principles of equity, the court "should only enter a judgment against Modeste." The court entered a final judgment against Jovanov for medical payments.

Jovanov appeals. He argues that (1) the superior court erred in granting summary judgment in favor of DOC on the question whether DOC was negligent in failing to prevent or respond promptly to the assault; (2) the court erred in granting summary judgment in favor of DOC on its counterclaim for reimbursement of Jovanov's medical expenses; and (3) DOC's actions violated his rights to due process and access to the courts.

## III. STANDARD OF REVIEW

"We review a grant of summary judgment de novo. We review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor."[7] We affirm "when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law."[8] "After the court makes reasonable inferences from the evidence in favor of the non-moving party,

---

[6]    323 P.3d at 36-38.

[7]    *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013).

[8]    *Id.* (alterations in original) (quoting *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011)).

summary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[9]  Furthermore,

> a non-moving party does not need to prove anything to defeat summary judgment.  But a non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence — the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence.[10]

"We apply the independent judgment standard of review when interpreting and applying statutes."[11]

## IV.  DISCUSSION

### A.  DOC Was Entitled To Summary Judgment On Jovanov's Negligence Claims.

Jovanov argues that the superior court erred in granting DOC's motion for summary judgment on his negligence claims, including his claims that (1) the assault was foreseeable and therefore DOC should have prevented it; (2) Officer Robinson failed to respond promptly to the argument and prevent further injury to Jovanov; and (3) DOC was negligent in understaffing the prison unit and placing the officer's desk out of view of the telephone.

---

[9]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[10]    *Id*. at 516 (emphasis omitted).

[11]    *Cragle v. Gray*, 206 P.3d 446, 449 (Alaska 2009).

### 1. Jovanov failed to demonstrate a genuine issue of material fact as to whether the assault was foreseeable.

DOC "owes a duty to inmates to exercise reasonable care for the protection of their lives and health."[12] "[T]he duty to protect encompasses the duty to protect inmates from reasonably foreseeable assaults by other inmates."[13] Certain circumstances, including circumstances in which there have been reports of threats between inmates, may make an assault foreseeable, and "[t]he scope of [DOC]'s duty under [this] negligence standard will be determined by the factual circumstances."[14] However, "[t]here are many circumstances in which an attack might not be reasonably foreseeable[;] . . . the duty to protect is not limitless — the prison 'should not be the insurer of the prisoner's safety.' "[15]

Jovanov claims that the assault was foreseeable and that DOC was therefore negligent in failing to prevent it. He argues that the assault was foreseeable because DOC knew or should have known that Modeste posed a risk of harm to him and because Jovanov and Modeste engaged in a loud argument before the assault that should have alerted Officer Robinson to the impending assault. But upon a de novo review of the evidence in the light most favorable to Jovanov, we conclude that no reasonable person could discern a genuine factual dispute on the issue of whether the assault was foreseeable.

---

[12] *Mattox v. State, Dep't of Corr.*, 323 P.3d 23, 26 (Alaska 2014).

[13] *Id*. at 27.

[14] *Id*. at 28.

[15] *Id*. (quoting *Joseph v. State*, 26 P.3d 459, 477 (Alaska 2001)).

### a. DOC had no reason to suspect that Modeste posed a risk of harm to Jovanov.

Jovanov argues that DOC had reason to suspect that Modeste would be dangerous to Jovanov and that DOC was therefore negligent in failing to separate them. Jovanov asserts in his brief that Modeste announced his problem with Jovanov to DOC. But in the superior court neither Jovanov nor Modeste ever claimed to have put DOC on notice of any problems between them. Modeste asked a correctional officer not to be placed in Hotel Mod where Jovanov was housed and to go back to his prior mod, but never identified Jovanov specifically. And Jovanov admitted that DOC had no way of knowing that Modeste posed any danger to him; Jovanov testified that he could not "hold [DOC] responsible for putting [Modeste] [in the same mod] because neither they knew nor did [he] know [that Modeste was a threat to Jovanov]." Jovanov also stated that he was not acquainted with Modeste before the day of the assault.

Without a specific warning to DOC, we cannot conclude it was on notice of the threat Modeste posed to Jovanov. In *Mattox v. State, Department of Corrections*, we concluded that there was a genuine issue of material fact as to DOC's notice of a threat to an inmate because the inmate had warned a guard in a way that allowed the guard to identify the plaintiff's eventual attacker,[16] but we warned that holding DOC liable in the absence of a specific warning would make the "only limit on the Department's liability . . . the self control of its inmates, as any attack by one inmate on another could be deemed reasonably foreseeable."[17] Because the warning Modeste

---

[16] *Id.* at 29 ("Mattox's identification of his potential attackers . . . makes foreseeability a much closer question.").

[17] *Id.* ("[I]f the assault were entirely unrelated to the threat of harm about which the Department was on notice, holding the Department liable might indeed make the Department the insurer of the prisoner's safety.").

allegedly gave DOC was not specific enough to put it on notice of the specific risk that materialized, holding that DOC was on notice of the threat Modeste posed would accomplish precisely what we cautioned against in *Mattox*.

We need only construe the facts in Jovanov's favor "within the boundaries of reasonable fact-finding,"[18] and will affirm summary judgment "if the record presents no genuine issue of material fact and if the movant is entitled to summary judgment as a matter of law."[19] In light of the testimony from Jovanov that DOC had no way of knowing that Modeste posed any danger to him, and because neither Jovanov nor Modeste claimed to put DOC on notice of issues between them, we conclude that Jovanov failed to raise a genuine issue of material fact that DOC had reason to suspect that Modeste posed a risk of harm to Jovanov.

Jovanov also argues that the assault was foreseeable because Modeste was convicted of manslaughter and was therefore an obvious danger to other inmates, including Jovanov. However, the undisputed affidavit of Sergeant Tom Elmore establishes that DOC correctly classified and assigned both Modeste and Jovanov to the mod.[20] And again, the mere presence of a dangerous prisoner does not create a foreseeable risk.[21] We hold that the evidence, viewed in the light most favorable to Jovanov, does not create a genuine issue of material fact from which a reasonable person

---

[18]     *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 n.14 (Alaska 2011).

[19]     *Id.* at 1030.

[20]     *See* 22 Alaska Administrative Code (AAC) 05.200 (2012) ("[DOC] will assign a prisoner to the least restrictive custody level based on an assessment of the prisoner's behavioral risk factors, supervision needs, and rehabilitative needs that is consistent to provide for staff, inmate, and public safety, and is within the resources available to the department.").

[21]     *See Mattox*, 323 P.3d at 29.

might find in Jovanov's favor that the assault was foreseeable. Because DOC had no reason to suspect that Modeste posed a threat to Jovanov, the superior court correctly granted summary judgment to DOC on Jovanov's negligence claims based on the alleged foreseeability of the threat Modeste posed to Jovanov.

> **b.** **Any loud argument preceding the assault did not make the assault foreseeable.**

Jovanov also argues that Modeste's assault was foreseeable because a loud argument preceded the assault. Jovanov claims that Officer Robinson should have heard the argument and intervened to prevent the assault. Jovanov supports this claim with his own assertion that the argument was loud enough to "wake up the mod pretty much," and with testimony from another inmate named Jerry Gates that there was "an argument going on that should have gotten someone's — at least the guard's attention."

In contrast, Modeste testified that the argument was not loud, explaining that "there [was] no reason to get loud in the middle of the mod" because he was "not trying to . . . bring attention from other inmates." And John Bill, Jovanov's cellmate, was positioned directly above the telephones; he testified that he saw Jovanov's "head swing for the phone on the bottom of the stairs" and that "the only thing that [he] heard was . . . a loud clacking sound." Bill testified that he "didn't hear anybody say anything."

But assuming that a loud argument did precede the assault, we conclude that such an argument did not render the eventual assault foreseeable. Even if the officer could hear the words Modeste said to Jovanov, Modeste never threatened Jovanov or implied that he would harm Jovanov. And Jovanov fails to demonstrate that loud arguments among inmates usually presage a fight. He provided no evidence on this point, admitted that loud arguments are common between prisoners, and acknowledged that many occur without subsequent violence. A silent video of events tends to supports

this admission. The recording shows that Jovanov and Modeste were behind the stairs for about a minute before Modeste assaulted Jovanov. In the video none of the other inmates looked in Modeste and Jovanov's direction before the assault occurred, but most of the inmates looked in the direction of the assault shortly after Modeste struck Jovanov. Given the lack of evidence that loud arguments are an accurate predictor of future violence in this context and the evidence that Modeste never threatened Jovanov, we conclude that DOC would not have been negligent even if Officer Robinson failed to respond to a loud argument between Modeste and Jovanov because any such argument did not make the assault foreseeable.

### 2. Jovanov failed to demonstrate a genuine issue of material fact as to whether Officer Robinson responded promptly.

Jovanov also argues that DOC was negligent because Officer Robinson failed to respond promptly to the argument. However, the video recording shows that inmates only turned to look at Jovanov and Modeste after the assault occurred; no attention was paid to the pair during the argument. Officer Robinson responded within five seconds of the assault as it drew his attention and that of most of the inmates. And Jovanov himself testified that he never had time to yell for help or alert Officer Robinson prior to the assault and that there was "no reason to call for help" before the assault. Jovanov also conceded that Officer Robinson responded very quickly after the assault began.[22] Based on the video evidence and Jovanov's testimony, we conclude that no reasonable person could discern a genuine factual dispute on the issue of whether Officer Robinson responded promptly to the argument, given the argument did not warrant the attention of the inmates or staff, and that when it turned physical, Officer Robinson

---

[22] When asked whether he "would agree that Officer Robinson, from this point [when the fight started], respond[ed] really exceptionally fast," Jovanov answered: "Yes, there is . . . no question about that."

-12-                                                                                          **7199**

responded within five seconds. We therefore uphold the superior court's decision to grant DOC's motion for summary judgment on these grounds.

### 3. Jovanov's claims regarding DOC's staffing decisions, general prison overcrowding problems, and DOC's officer placement decisions do not form a basis for a viable negligence claim.

Jovanov next argues that DOC was negligent because inadequate staffing, overcrowding, and the layout of the correctional facility played a role in facilitating the assault. However, these allegations cannot form the basis for Jovanov's negligence claim because the claim is precluded by the doctrine of discretionary function immunity.

"Discretionary function immunity 'seeks to ensure that private citizens do not interfere with or inhibit the governing process by challenging through private tort actions basic governmental policy decisions.' "[23] Under Alaska's state tort claims act, the State and its agencies are immune from suit when the plaintiff's claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused."[24] In determining whether a particular decision or action is immune, "we distinguish between decisions that involve basic planning or policy and those that are merely operational in the sense that they implement plans or carry out policy."[25] "Planning decisions 'fall under the exception because they involve formulation of basic policy' including consideration of financial, political, economic, or social effects of the policy. 'Normal day-by-day operations of the government' are not

---

[23] *Steward v. State*, 322 P.3d 860, 863 (Alaska 2014) (quoting *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981)).

[24] AS 09.50.250(1). *See also Steward*, 322 P.3d at 863.

[25] *Steward*, 322 P.3d at 863 (quoting *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 976 (Alaska 2005)).

planning decisions and are not entitled to immunity under the discretionary function exception."[26]  "Actions that are operational in nature, and therefore not entitled to discretional immunity, are those that involve either no room for discretion or involve only discretion free from policy considerations."[27]

The State does not need to prove that it actually made a considered decision or policy evaluation for a decision to be immune.[28]  And "[d]ecisions about how to allocate scarce resources" are ordinarily "immune from judicial review."[29]  When analyzing cases under AS 09.50.250 we recognize that "if decisions require the State to balance 'the detailed and competing elements of legislative or executive policy,' they nearly always deserve protection by discretionary function immunity."[30]

---

[26]    *Id*. (first quoting *Estate of Arrowwood v. State*, 894 P.2d 642, 644-45 (Alaska 1995); then quoting *State v. Abbott*, 498 P.2d 712, 720 (Alaska 1972)). *See also State, Dep't of Corr. v. Cowles*, 151 P.3d 353, 358-59 (Alaska 2006).

[27]    *R.E. v. State*, 878 P.2d 1341, 1349 (Alaska 1994).

[28]    *State, Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 458 n.5 (Alaska 1997) (" '[S]ome jurisdictions require that a state or local governmental unit seeking to obtain the protection of discretionary function immunity show that a considered policy evaluation actually took place.'  Alaska does not require such a showing." (alterations in original) (first quoting 57 AM. JUR. 2d *Municipal, County, School, and State Tort Liability* § 123 (1988); then citing *Indus. Indem. Co. v. State*, 669 P.2d 561, 566 n.11 (Alaska 1983))).

[29]    *Adams v. City of Tenakee Springs*, 963 P.2d 1047, 1051 (Alaska 1998). *See also Estate of Arrowwood*, 894 P.2d at 646 ("It is well established that both legislative appropriations and executive department budget decisions are discretionary functions immune from judicial inquiry."); *Indus. Indem. Co.*, 669 P.2d at 564-65 ("Decisions regarding the allocation of scarce resources are usually discretionary, and thus immune from judicial inquiry.").

[30]    *Brewer v. State*, 341 P.3d 1107, 1121 (Alaska 2014) (quoting *Guerrero*,
(continued...)

Prison overcrowding is an issue that requires prison officials to make decisions involving staffing levels, which are discretionary agency matters involving resource allocation. In *Adams v. City of Tenakee Springs*, Adams sued the city for negligence and the trial court granted the city's motion in limine to exclude evidence of inadequate staffing.[31] We upheld the court's decision because "[s]taffing a fire department . . . is fundamentally a matter of resource allocation" and "[d]ecisions about how to allocate scarce resources are matters of policy immune from judicial review."[32] Likewise, DOC's decisions involving staffing or overcrowding at the prison facility at which Modeste and Jovanov were housed are immune from negligence claims under AS 09.50.250(1) because prison staffing decisions are fundamentally a matter of resource allocation.

Discretionary function immunity also applies to Jovanov's claim that DOC was negligent in its placement of the officer's duty station within the prison mod. Jovanov claims that it was reasonable to foresee that the conditions at the Anchorage Correctional Complex — an "overcrowded mod," "a 'blind spot' by the phones where prisoners congregated," and "only one guard who was allowed to use the computer when the prisoners were out of their cells" — would increase the likelihood that "an inmate would take advantage of that to assault another inmate." But the position of the desk and the decision regarding the number of correctional officers to be assigned to a mod are "scarce resource" decisions related to staffing and internal prison security. DOC was entitled to position the desk based on the scarceness of personnel resources and the need

---

[30](...continued)
123 P.3d at 977).

[31]     963 P.2d at 1049.

[32]     *Id*. at 1051.

to maximize the officer's ability to observe the inmates in the mod. Therefore, DOC is immune from Jovanov's negligence claims involving the positioning of the officer's desk.

The superior court properly granted summary judgment in favor of DOC on Jovanov's claims regarding staffing and the position of the officer's desk. These decisions involve policy considerations based on resource allocation, and DOC's decisions on such matters are immune under the doctrine of discretionary function immunity.

**B.    We Remand For The Superior Court To Consider Whether DOC Was Entitled To Summary Judgment On Its Counterclaim Against Jovanov For The Cost Of Medical Care Provided To Him While Incarcerated.**

Jovanov argues that he should not be responsible for his medical costs related to Modeste's assault for several reasons. He first argues that DOC failed to help him obtain medical insurance. Jovanov failed to preserve this argument on appeal, so we do not consider it.[33]

Jovanov also argues that DOC should have provided him with his medical billing slips, which would have permitted him to assess the accuracy of the billings. But DOC provided him with a complete copy of his medical records during discovery as well as a complete roster of each bill DOC paid, he conceded that all of the medical care provided to him by DOC was "probably necessary," and he fails to point to any specific

---

[33]    *See Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) ("[I]ssues not properly raised in the trial court will not ordinarily be considered on appeal."). Jovanov fails to demonstrate that DOC had a duty to help him obtain medical insurance in the relevant time period. We note, however, that AS 33.30.028 was amended in 2016 to give DOC a statutory duty to apply for medical assistance on behalf of prisoners who require certain outside healthcare. Ch. 25, 35, SLA 2016; AS 33.30.028(c)-(d).

inaccuracies in the documents. Thus, he fails to set forth evidence demonstrating that there was a genuine issue of material fact related to his medical billings.[34]

Jovanov argues further that DOC should assess the costs of his medical care solely against Modeste, asking us to extend an equitable principle he finds in *Smith v. State, Department of Corrections* to conclude that Modeste's criminal conviction for the assault makes Modeste liable for Jovanov's health care costs and bars DOC from seeking reimbursement from him.[35] But in our unpublished decision in *Smith*, we permitted DOC to order an assailant to pay medical expenses for the victim because "interpreting AS 33.30.011 to allow DOC to order restitution for injuries caused by a prisoner [was] 'reasonably necessary' to carry out the goals of the statute."[36] Needless to say, this unpublished decision did not create legal precedent, and even if it did, we permitted rather than required DOC to pursue reimbursement from an assailant for a victim in that case.[37] Given the flexibility we afforded DOC in *Smith*, we decline to extend any equitable principle there may have been in *Smith* to require that DOC collect medical costs from Jovanov's assailant rather than from Jovanov.

---

[34]   *See Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008) ("When a party seeking summary judgment argues that there are no genuine issues of material fact in dispute, the adverse party must produce admissible evidence that reasonably demonstrates that a triable issue of fact exists."); *Martech Constr. Co. v. Ogden Envtl. Servs., Inc.*, 852 P.2d 1146, 1149-50 n.7 (Alaska 1993) ("To defeat a motion of summary judgment an adverse party may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact.").

[35]   *Smith v. State, Dep't of Corr.*, No. S-14034, 2012 WL 3870826 (Alaska Sept. 5, 2012).

[36]   *Id*. at *4 (quoting *Wilson v. State, Dep't of Corr.*, 127 P.3d 826, 829 (Alaska 2006)).

[37]   *See id.*

Jovanov also questions his legal liability for the cost of medical care received while incarcerated. The superior court relied on AS 33.30.028 to conclude that, as a matter of law, DOC was entitled to be reimbursed for medical costs it paid on Jovanov's behalf. Jovanov argues that under the statute and our decision in *State, Department of Corrections v. Hendricks-Pearce* (*Hendricks-Pearce I*), indigent prisoners are not required to pay their full health care costs.[38] Jovanov proposes that we remand the issue of his liability for medical costs and require the superior court to conduct a hearing on his ability to pay. DOC supports the superior court's position, arguing that AS 33.30.028 and DOC regulations allow DOC to charge prisoners for the full cost of healthcare services provided by health care providers other than department employees resulting from an assault.

"A prisoner will be provided medically necessary health care services regardless of the prisoner's ability to pay or arrange for payment or coverage for the services."[39] Nevertheless, AS 33.30.028 outlines a prisoner's financial responsibility for the costs of these services:

> (a) Notwithstanding any other provision of law, the liability for payment of the costs of medical, psychological, and psychiatric care provided or made available to a prisoner committed to the custody of the commissioner is, subject to (b) of this section, the responsibility of the prisoner and the
>
> (1) prisoner's insurer if the prisoner is insured under existing individual health insurance, group health insurance, or any prepaid medical coverage;
>
> (2) Department of Health and Social Services if the prisoner is eligible for assistance under AS 47.07 or AS 47.25.120-47.25.300;

---

[38]   254 P.3d 1088 (Alaska 2011).

[39]   22 AAC 05.121(a) (2017).

(3) United States Department of Veterans Affairs if the prisoner is eligible for veterans' benefits that entitle the prisoner to reimbursement for the medical care or medical services;

(4) United States Public Health Service, the Indian Health Service, or any affiliated group or agency if the prisoner is a Native American and is entitled to medical care from those agencies or groups; and

(5) parent or guardian of the prisoner if the prisoner is under the age of 18.

(b) The commissioner shall require prisoners who are without resources under (a) of this section to pay the costs of medical, psychological, and psychiatric care provided to them by the department. At a minimum, the prisoner shall be required to pay a portion of the costs based upon the prisoner's ability to pay.

In *Hendricks-Pearce I* the issue was whether the State may seek post-release reimbursement of medical costs incurred during incarceration.[40] We decided that the State could seek post-release reimbursement, and we remanded the case for further proceedings regarding the second question at issue in *Hendricks-Pearce I* — whether AS 33.30.028 permits reimbursement for a prisoner's outside medical care when the prisoner does not have any of the funding sources identified in AS 33.30.028(a), such as insurance or state aid.[41] We ultimately addressed that question on an appeal from remand in *Hendricks-Pearce II*, but this court was evenly divided with one justice not

---

[40] 254 P.3d at 1089.

[41] *Id*. at 1093.

participating, and we failed to reach a majority consensus.[42]  As a result, the decision had the effect of affirming the superior court's decision, but has no legal precedential value.[43]

But we need not reach the extent of Jovanov's financial responsibility for his medical care while in prison or any potential hearing requirement on his ability to pay under AS 33.30.028 because the superior court erred by granting DOC summary judgment on its counterclaim for medical costs sua sponte.  DOC filed a motion for summary judgment in October 2013, but the substance of the motion dealt exclusively with the negligence claims against DOC and concluded with "all of plaintiff's claims against the State of Alaska Department of Corrections . . . should be dismissed."  It did not use the word "counterclaim" once or discuss medical costs.  Subsequent memoranda from both parties addressed only the negligence claims.  It was not until oral argument on DOC's motion that the court and Jovanov briefly discussed Jovanov's need to show damages, including the cost of medical care, and DOC's counterclaim for reimbursement.

A week later, the superior court issued its order on the summary judgment motions.  In the introduction to its order the court stated, "[DOC] moves for summary judgment asking that the court find, as a matter of law, that the State was not responsible for the assault and that Jovanov's claims against DOC therefore should[] be dismissed.

---

[42]     *Hendricks-Pearce v. State, Dep't of Corr.* (*Hendricks-Pearce II*), 323 P.3d 30, 38-39 (Alaska 2014) (plurality opinion).

[43]     *See* Alaska R. App. P. 106(a) ("In an appeal to the supreme court, any issue or point on appeal on which the justices are equally divided is affirmed in that appeal, but the issue or point decided by an equally divided court shall not have precedential effect.").

The State also seeks summary judgment as to its counterclaim against Jovanov."[44]  The court granted "DOC's Motion on its Counterclaim" but ruled that "DOC will still need to prove the exact amount of such expenses."  The court granted summary judgment on the counterclaim despite the fact that none of the motion practice up to this point had addressed DOC's counterclaim.

DOC then filed a memorandum in support of its counterclaim for medical costs as the court had ordered.  In its memorandum, DOC noted that it had been granted summary judgment on its counterclaim and  "request[ed] a judgment that requires Jovanov to reimburse the State for $119,051.15 that was paid for his medical costs."  It included an accompanying affidavit and roster of medical bills paid on Jovanov's behalf.  Two weeks later, Jovanov filed an opposition to the entry of final judgment for medical expenses.  In his opposition he argued that he needed medical records supporting each bill in the DOC's supporting affidavit as well as a statement from a medical expert.  He also addressed the underlying legal basis for DOC's counterclaim, arguing that in light of *Hendricks-Pierce II*, his lack of money, his status as the victim of a crime rather than the perpetrator, and principles of equity, the court "should **only** enter a judgment against Modeste." (Emphasis in original.)  He also requested oral argument.

DOC filed a reply, arguing that Jovanov's opposition should be treated as a motion for reconsideration of the grant of summary judgment on its counterclaim for medical expenses;  DOC's reply also addressed the factual accuracy of the medical bills and pointed out that Jovanov had already been provided his medical records.  In addition, DOC argued that the plain language of AS 33.30.028 makes Jovanov liable for medical care provided or made available to him while committed to the custody of DOC.

---

[44]    This was error, as DOC had not moved for summary judgment on its counterclaim for reimbursement of medical costs.

The superior court issued an order finding that there was "no genuine issue of material fact, that DOC incurred medical expenses . . . in the amount of $119,051.15" and that "pursuant to AS 33.30.028 the State of Alaska is entitled as a matter of law to reimbursement." On the same day it entered a final judgment incorporating its conclusion. It made no mention of Jovanov's request for oral argument.

We have reversed a superior court's sua sponte grant of summary judgment on more than one occasion. In *Kentopp v. Anchorage*, we addressed whether summary judgment had been properly granted to Anchorage on claims alleging it had violated its charter in establishing municipal assembly voting districts.[45] The superior court had granted summary judgment on all issues related to this claim, but also considered sua sponte the question of malapportionment under a new reapportionment plan the city had adopted.[46] We concluded "that the superior court erred in considering sua sponte the question of malapportionment under the reapportionment plan" and that "[a]pplication of this settled rule is particularly appropriate in the present case because Anchorage must be afforded an opportunity to offer a justification for [the plan]."[47]

Similarly, in *Demmert v. Kootznoowoo*, we vacated a decision where "[p]laintiffs were not given notice and a reasonable opportunity to oppose [a] motion [for summary judgment] as a motion for summary judgment" because they believed what was at issue was a judgment on the pleadings and had no reason to know the superior court would convert the motion.[48] In addition, we stated that "it [was] inappropriate to require a detailed showing of prejudice from a party who has not had a reasonable opportunity

---

[45] 652 P.2d 453, 454 (Alaska 1982).

[46] *Id.* at 457.

[47] *Id.* at 464.

[48] 960 P.2d 606, 611 (Alaska 1998) (emphasis omitted).

to oppose a motion for summary judgment, whether converted or original."[49] And Alaska Civil Rule 77 provides a party opposing summary judgment the right of oral argument,[50] but Jovanov's request for oral argument on DOC's counterclaim for medical costs was not addressed.

We recognize that the exchange of motions and the subsequent court order following the court's sua sponte decision demonstrate that Jovanov was at least able to make legal arguments as to his liability for medical bills incurred while in prison. But forcing him to argue against a summary judgment already granted, rather than giving him the opportunity to oppose a motion for summary judgment that was properly filed, was almost certainly prejudicial from a practical perspective, even considering that the superior court invoked the summary judgment standard in its order, rather than the standard for reconsideration. Had the counterclaim against Jovanov not been disposed of sua sponte, it is possible that more substantive arguments regarding AS 33.30.028 and whether it made Jovanov liable for medical care received in prison would have surfaced, that factual questions as to whether Jovanov had the resources listed in AS 33.30.028(a) would have been addressed, and that the question of Jovanov's ability to pay would have emerged.

Given that "it is inappropriate to require a detailed showing of prejudice from a party who has not had a reasonable opportunity to oppose a motion for summary

---

[49] *Id.* at 612; *see also State, Dep't of Revenue, Child Support Enf't Div., ex rel. Hawthorne v. Rios*, 938 P.2d 1013, 1016 (Alaska 1997).

[50] *See* Alaska R. Civ. P. 77(c), (e); *see also Shooshanian v. Wagner*, 672 P.2d 455, 460-61 (Alaska 1983) (declining to "review the superior court's sua sponte dismissal as a motion for summary judgment because [appellants] did not have sufficient notice or an adequate opportunity to respond" under Civil Rules 77(c) and (e)).

judgment, whether converted or original,"[51] given that a significantly related legal issue was unresolved in Alaska law when this court was unable to reach a consensus in *Hendricks-Pierce II*, and given that the parties dedicated relatively little attention to this issue both below and on appeal, we reverse the superior court's grant of summary judgment on DOC's counterclaim and remand for further proceedings to ensure that Jovanov is afforded a reasonable opportunity to oppose any summary judgment motion[52] and to have the benefit of a fully developed record and more robust briefing should this case be appealed once again.

We also note that the superior court granted Jovanov's motion for summary judgment on his claim against Modeste, finding that "Modeste's plea [in his criminal case] establishes his liability for any damages caused by his reckless endangerment," but it also explained that "Jovanov will still need to prove at trial what his damages are and that Modeste's actions caused such damages." The court later determined that "pursuant to AS 33.30.028 the State of Alaska is entitled as a matter of law to reimbursement from . . . Jovanov for $119,051.15," and entered a final judgment to that effect. DOC failed to request, and the superior court did not on its own motion grant, a partial final judgment under Alaska Civil Rule 54(b).[53] Perhaps the court assumed that DOC was

---

[51] *Demmert*, 960 P.2d at 612.

[52] On remand, if DOC intends to pursue its counterclaim for reimbursement of medical expenses, it must either file a motion for summary judgment or proceed to trial on this issue.

[53] Alaska R. Civ. P. 54(b) ("When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of
(continued...)

entitled to a final judgment under AS 33.30.028 and that a Rule 54(b) finding and order were unnecessary. None of the parties raised this issue, and we are not called upon to address it.

"We review matters that were not raised below and not listed in a statement of points on appeal for plain error. Plain error exists where 'an obvious mistake has been made which creates a likelihood that injustice has resulted.' "[54] From the record before us we conclude that Jovanov's claim against Modeste is still live, the superior court has not completely resolved Jovanov's remaining negligence claim against Modeste, and it was plain error to issue a complete judgment in DOC's favor in the absence of a Rule 54(b) determination.

Though the court granted summary judgment against Modeste on liability, it indicated a trial would be necessary to determine causation and damages. If on remand the superior court determines that DOC is still entitled to summary judgment on its counterclaim against Jovanov for medical costs, Jovanov may seek reimbursement of these costs and any other damages he can prove from Modeste in the superior court. If the superior court concludes on remand that DOC is not entitled to summary judgment on its counterclaim, Jovanov may still pursue his negligence claim against Modeste, but

---

[53](...continued) judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").

[54]     *Laughlin v. Laughlin*, 229 P.3d 1002, 1005 (Alaska 2010) (footnote omitted) (quoting *In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009)).

the court will have to take into account what amount of Jovanov's medical costs were paid for by DOC rather than Jovanov.

### C. Jovanov Had Notice That He Could Be Responsible For Medical Costs Incurred While In Prison, And DOC Did Not Seek Costs To Curtail Access To The Courts.

Jovanov briefly makes two additional constitutional arguments. First, he asserts that there is no "notice that DOC will not cover necessary medical costs" when inmates enter prison and questions whether this complies with due process. However, the language of AS 33.30.028, establishing Jovanov's potential financial responsibility for medical care, provides adequate notice. And "it is axiomatic that ignorance of the law is no excuse, except in very limited circumstances."[55]

Second, Jovanov argues that "only those that sue DOC get charged for outside medical care." A claim that DOC only seeks costs from inmates who sue DOC is troubling in light of "[a]n inmate's right to be free of state interference with his right of access to the court system."[56] But Jovanov fails to identify any evidence demonstrating that DOC was seeking to deter him from accessing the courts other than the counterclaim itself. DOC's counterclaim could just as easily have been motivated by a desire to preserve its statutory right to deduct medical expenses from any eventual judgment entered against it on Jovanov's negligence claim, rather than a desire to impermissibly curtail prisoners' access to the courts.[57] We conclude that Jovanov's additional constitutional arguments are currently without merit.

---

[55] *Holmes v. Wolf*, 243 P.3d 584, 600 (Alaska 2010).

[56] *See, e.g.*, *Mathis v. Sauser*, 942 P.2d 1117, 1120-23 (Alaska 1997).

[57] *See Hendricks-Pearce II*, 323 P.3d 30, 32 (Alaska 2014).

## V.  CONCLUSION

We AFFIRM the superior court's grant of summary judgment in favor of DOC on Jovanov's negligence claims.  We REVERSE the court's grant of summary judgment in favor of DOC on its counterclaim against Jovanov for medical costs, VACATE the judgment for medical costs, and REMAND for further proceedings consistent with this opinion.  We also REMAND for further proceedings on Jovanov's negligence claim against Modeste so that Jovanov may seek to prove any damages caused by Modeste.